S09A1137, S09A1142. KILLINGSWORTH v. KILLINGSWORTH
(two cases).
(686 SE2d 640)

NAHMIAS, Justice.

This appeal involves a contempt sanction arising out of a divorce case. The trial court held Donald Killingsworth in contempt of court for willfully disobeying several provisions of the parties' 2006 divorce decree. We granted Mr. Killingsworth's application for discretionary appeal and directed the parties to address whether the trial court impermissibly modified the divorce decree by requiring Mr. Killingsworth to pay his ex-wife, Cynthia Killingsworth, $1,850 in cash in lieu of transferring one-half of his 401 (k) account to her as ordered by the divorce decree. As explained below, we conclude that this change did constitute an impermissible modification of the divorce decree and therefore reverse that portion of the trial court's judgment. Mr. Killingsworth's other three enumerations of error are without merit, and we affirm the remainder of the contempt judgment, including the finding that Mr. Killingsworth willfully disobeyed the 2006 divorce decree, except for the calculation of attorney fees for the contempt proceeding which the trial court will need to reconsider on remand.

1. The Killingsworths divorced in late 2006. The divorce decree awarded Mr. Killingsworth the couple's motorcycle and extremely run-down mobile home, and Ms. Killingsworth was ordered to leave the residence "in the same condition that it was in at the date of the separation." The divorce decree awarded Ms. Killingsworth $2,000 for her interest in the couple's motorcycle, $1,000 in alimony for moving expenses, alimony of $500 per month for 12 months, and

$2,000 in attorney fees. The decree also awarded her "one-half ($\frac{1}{2}$) of the Husband's retirement account as of November 13, 2006, together with any gains or losses accruing on said amount subsequent to the hearing" and directed that the "attorney of the Wife shall prepare the QDRO that is necessary to transfer these funds."[1]

Ms. Killingsworth vacated the mobile home on November 26, 2006, shortly after the final decree was filed. The mobile home was in the same dilapidated condition it was in when the parties separated in 2005, and she locked the deadbolt to the front door on her way out. Ms. Killingsworth learned that Mr. Killingsworth was in the mobile home over the following weekend, and when she went there a few days later, she found the door kicked in, saw running water on the floor in the hallway, and immediately called the police. The mobile home, which was in poor condition to begin with, had been extensively vandalized. The following day, Mr. Killingsworth paid Ms. Killingsworth the $1,000 in alimony he owed her for moving expenses, and he made one monthly alimony payment of $500. From that point forward, Mr. Killingsworth refused to make any of the payments ordered under the divorce decree, citing as justification the vandalism to the mobile home and the provision of the divorce decree ordering Ms. Killingsworth to leave it in the same condition it was in when the parties separated.

Ms. Killingsworth filed a motion for contempt against Mr. Killingsworth in May 2008, and three months later, Mr. Killingsworth filed a motion for contempt against her. On December 12, 2008, the trial court conducted an evidentiary hearing at which it heard testimony from both parties. A month later, the trial court entered substantially identical orders holding Mr. Killingsworth in contempt of court but declining to hold Ms. Killingsworth in contempt. The contempt orders directed Mr. Killingsworth to pay Ms. Killingsworth $11,050. This sum represented the $5,500 in back due monthly alimony awarded in the divorce decree plus the $2,000 for Ms. Killingsworth's interest in the couple's motorcycle and the $2,000 attorney fees award; plus $1,850 for Ms. Killingsworth's one-half interest in Mr. Killingsworth's 401 (k) account;[2] plus an additional $1,200 in attorney fees for the contempt proceeding;

---

[1] "QDRO" is short for "qualified domestic relations order," a reference to the federal Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426 ("REA"). The REA "permits the assignment of pension plan benefits to non-plan participants if done pursuant to a QDRO." *Elliott v. Elliott*, 149 SW3d 77, 81 (Tenn. Ct. App. 2004).

[2] The trial court set the value of Ms. Killingsworth's one-half interest in the 401 (k) account at $1,850 based on Ms. Killingsworth's testimony at the contempt hearing that Mr. Killingsworth said in a deposition that his 401 (k) account was worth $3,700 at one point.

minus $1,500 for three appliances awarded to Mr. Killingsworth in the divorce decree that Ms. Killingsworth allegedly removed from the mobile home.

We granted Mr. Killingsworth's application for discretionary appeal on March 16, 2009, and directed the parties to brief the following question: "Did the trial court err in requiring the husband to pay 401 (k) funds in cash upon holding the husband in contempt?" Mr. Killingsworth filed timely notices of appeal from the two substantially identical contempt orders, and the case was submitted for decision on the briefs.

2. Mr. Killingsworth contends that the trial court impermissibly modified the divorce decree in the contempt orders by requiring him to pay Ms. Killingsworth $1,850 in cash in lieu of transferring half his 401 (k) funds to her through a QDRO prepared by her counsel, as required by the 2006 divorce decree. We agree.

A trial court may interpret a divorce decree, or clarify a prior order or judgment, in the course of resolving contempt issues placed before it. See *Johnston v. Johnston*, 281 Ga. 666, 667 (641 SE2d 538) (2007). In addition, "[t]he trial court has the power to see that there be compliance with the intent and spirit of its decrees[,] and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party." *Cason v. Cason*, 281 Ga. 296, 297 (637 SE2d 716) (2006) (citation and punctuation omitted). However, a trial court has no power to modify the terms of a divorce decree in a contempt proceeding. *Smith v. Smith*, 281 Ga. 204, 206 (636 SE2d 519) (2006). The test for distinguishing permissible interpretations and clarifications from impermissible modifications is "whether the clarification [or interpretation] is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." *Cason*, 281 Ga. at 297 (citation and punctuation omitted).

The trial court's contempt order did not merely "clarify" the provision of the divorce decree awarding Ms. Killingsworth one-half of Mr. Killingsworth's 401 (k) account. The divorce decree specified both how Ms. Killingsworth's interest in the 401 (k) account would be calculated and the manner in which the transfer was to be accomplished, including requiring her counsel to prepare the QDRO, which had not been done. We agree with Mr. Killingsworth that transmuting this award into a presently due cash obligation of $1,850 was "so contrary to the apparent intention of the original order as to amount to a modification." Id. (citation and punctuation omitted). Accordingly, we reverse the portion of the contempt orders directing Mr. Killingsworth to pay Ms. Killingsworth $1,850 in cash for her one-half interest in Mr. Killingsworth's 401 (k) plan. Our holding does not, of course, relieve Mr. Killingsworth of his obliga-

tion to transfer to Ms. Killingsworth one-half of his 401 (k) account "as of November 13, 2006, together with any gains or losses accruing on said amount" subsequent to the final divorce hearing, as required by the divorce decree, with Ms. Killingsworth's counsel remaining responsible for preparing the necessary QDRO.

3. Mr. Killingsworth contends that the trial court erred in failing to hold Ms. Killingsworth in contempt of court for allegedly failing to turn over the marital residence to him in the same condition it was in when the parties separated. Trial courts have "broad discretion" in ruling on a motion for contempt, *Cameron v. Richards*, 246 Ga. 231, 231 (271 SE2d 146) (1980), and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it, *Pate v. Pate*, 280 Ga. 796, 798 (631 SE2d 103) (2006). There is no evidence in the record that Ms. Killingsworth did anything to damage the marital residence. In addition, there was evidence before the trial court that someone seriously vandalized the property after Ms. Killingsworth left, possibly Mr. Killingsworth himself or someone acting at his direction. Accordingly, there was ample evidence in the record to support the court's finding that Ms. Killingsworth did not willfully disobey the provision of the divorce decree requiring her to leave the marital residence in the same condition, and we affirm the trial court's decision not to hold her in contempt.

4. Mr. Killingsworth contends that the trial court abused its discretion in awarding Ms. Killingsworth $1,200 in attorney fees for the contempt proceeding because it failed to consider the financial circumstances of the parties as required by OCGA § 19-6-2 (a) (1).[3] However, Mr. Killingsworth testified at the evidentiary hearing on the contempt motions that he owned property worth $30,000 to $40,000, and Ms. Killingsworth testified that when the parties divorced in 2006, Mr. Killingsworth had almost $40,000 in cash stashed away in a box. Under the circumstances, we cannot say that the trial court failed to consider the financial circumstances of the parties, and the court did not abuse its discretion in awarding Ms. Killingsworth attorney fees. However, on remand, the trial court should reexamine the amount of attorney fees awarded for the contempt proceeding. To the extent the award was based on the 401

[3] OCGA § 19-6-2 (a) (1) provides as follows:

The grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, . . . shall be . . . [w]ithin the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party. . . .

(Internal division omitted.)

(k) issue, the court may consider, in its discretion, revising it in light of our disposition of that issue in Division 2 above.

5. Finally, Mr. Killingsworth claims that the trial court erred when it refused to allow his attorney to make a closing argument at the evidentiary hearing on the contempt motions. In *Wilson v. Wilson*, 277 Ga. 801, 802 (596 SE2d 392) (2004), this Court recognized that closing argument is a material right in trials, even bench trials. However, a contempt proceeding is not a separate lawsuit, and as such, an evidentiary hearing on a contempt motion is not the equivalent of a trial. See *Phillips v. Brown*, 263 Ga. 50, 51 (426 SE2d 866) (1993) ("It is axiomatic that an action for contempt is ancillary to the primary action and, as such, is not a pleading but a motion."); *Opatut v. Guest Pond Club, Inc.*, 254 Ga. 258, 258 (327 SE2d 487) (1985) ("[A]n application for contempt may not, standing alone, serve to commence a civil action for damages as it is not a complaint."). Moreover, in *Bull v. Bull*, 280 Ga. 49, 50-51 (622 SE2d 326) (2005), we held that where a party does not request closing argument, the right to closing argument recognized in *Wilson v. Wilson* is waived. A review of the hearing transcript shows that Mr. Killingsworth did not request closing argument. Accordingly, there was no error.

*Judgment affirmed in part, reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED NOVEMBER 23, 2009.

Johnston, Owen & Bullard, Lance N. Owen, for appellant.
R. Edwin Joyner, for appellee.