A10A1463, A10A1464. GREENE v. GREENE; and vice versa.

(701 SE2d 911)

MIKELL, Judge.

Mark Carroll Greene ("Husband") and Alla Yuriyevna Greene ("Wife") were divorced by the Superior Court of Gwinnett County on September 14, 2005, when the court entered a final judgment and decree of divorce, which incorporated a Settlement Agreement negotiated by the parties. These appeals involve the trial court's grant of Wife's motion for contempt against Husband for violating the Settlement Agreement. In Case No. A10A1463, Husband appeals the trial court's order finding him in contempt, and in Case No. A10A1464, Wife appeals the trial court's failure to find Husband in wilful contempt.[1] We consolidate these appeals for disposition in a single opinion.

## Case No. A10A1463

1. In two related enumerations of error, Husband argues that the trial court erred when it found him in contempt of a provision in the Settlement Agreement that gave Wife final decision-making authority on matters related to religion. He contends that the court's ruling restricted his freedom to share his religious beliefs with his child and was overly broad. A trial court has broad discretion to determine whether a decree has been violated,[2] and "such determination will

---

[9] Heard does not challenge the grant of summary judgment on the claims for negligent supervision, hiring and retention.

[1] Husband filed an application for discretionary appeal, which this Court transferred to the Supreme Court. Husband filed a motion to transfer the application back to this Court, which was granted by the Supreme Court, and his application was thereafter granted.

[2] *Roquemore v. Burgess*, 281 Ga. 593, 594 (642 SE2d 41) (2007).

not be disturbed on appeal [in a contempt case] in the absence of an abuse of discretion,"[3] which we do not find in the instant case.

> Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements. It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears.[4]

The parties have one daughter, who was born on September 15, 2001. Wife is Jewish, and Husband is Christian. In the Settlement Agreement, the parties agreed that they would share joint legal custody of the child and that Wife would be the child's primary and sole physical custodian. The provision at issue states, in pertinent part:

> Joint legal custody means that the parties shall consult with each other on all major decisions pertaining to the education, health care, religious training and upbringing of this child, with a view towards arriving at a harmonious policy calculated to promote the child's best interests. . . . In the event that the parties cannot agree on said major decisions, then the Wife shall be the "tie-breaker" and she shall make the ultimate decision concerning these matters, with the exception that the Husband shall be the "tie-breaker" for any and all major decisions related to the child's primary or secondary schooling, as well as extra-curricular activities.[5]

During the contempt hearing, Husband acknowledged that he had agreed that the child would be raised in the Jewish faith, would attend Hebrew school, become Bat Mitzvah and follow other Jewish traditions. However, Husband admitted that he had taken the child to numerous Christian churches for various reasons. He also testified that he told the child that she was Jewish on the outside and Christian on the inside; that he shared Christian prayers with the child; that he and his mother read the Bible to the child; that his mother taught the child the Christian faith from the Bible, which

---

[3] (Citations omitted.) *Kirkendall v. Decker*, 271 Ga. 189, 190-191 (516 SE2d 73) (1999).

[4] (Citations and punctuation omitted.) *Jones v. Jones*, 280 Ga. 712, 714 (1) (632 SE2d 121) (2006).

[5] The trial court modified this provision by giving Wife the final decision-making authority on education, health care, religious training, and extra-curricular activities in its order. This provision comports with OCGA § 19-9-6 (2), which defines joint legal custody, and also gives the court the authority to designate one parent to have sole power to make certain decisions. See *Frazier v. Frazier*, 280 Ga. 687, 690 (3) (631 SE2d 666) (2006).

included reading about the birth, death, and the resurrection of Jesus Christ; and that the child told him that she was conflicted about the two different faiths. Husband also admitted that he gave the child a children's Bible, as well as DVDs of Christian stories and movies; that he taught her Christian songs and played them while riding in the car with the child; and that he had referred to Wife's parents by numbers but denied that he was referencing the Holocaust. Despite his actions, however, Husband acknowledged that he understood that the Settlement Agreement gave Wife the final decision-making authority with regard to major religious decisions.

"Where any contractual term of a settlement agreement incorporated into a [divorce] decree is clear, unambiguous, and capable of only one interpretation as written, the provision's plain meaning must be strictly enforced."[6] Here, the Settlement Agreement is clear that Wife had the right to make the final decisions about the child's religious upbringing, and the trial court correctly concluded that the Agreement governs. Accordingly, we find that the trial court did not abuse its discretion when it held Husband in contempt of the Settlement Agreement based on the actions to which he testified. As an aside, we note that even in the absence of an agreement, the custodial parent has the authority to determine religious training,[7] and that "[o]nce custody has been awarded, courts should be loath to interfere with the religious training sanctioned by the custodian, since no end of difficulties would arise if judges sought to prescribe or proscribe the selection of a religious faith made by a custodial parent."[8]

2. In his final enumeration of error, Husband argues that the trial court's order must be reversed on the grounds that the provisions under which he can purge himself of contempt are stated in the negative, rendering them unclear and indefinite. This argument lacks merit.

The trial court's order states that Husband may purge himself of contempt by adhering to the provisions that follow.

(a) Mr. Greene may not indoctrinate the child in a manner which promotes the child's alienation from Judaism. (b) Mr. Greene shall not take the child to church (whether to church services or Sunday School or church education programs); nor engage the child in prayer or Bible study if it promotes rejection rather than acceptance, of the child's . . . Jewish

---

[6] (Citation omitted.) *Page v. Baylard*, 281 Ga. 586, 587 (1) (642 SE2d 14) (2007).

[7] *Applebaum v. Hames*, 159 Ga. App. 552, 553 (284 SE2d 58) (1981).

[8] (Citation omitted.) Id. at 553-554.

self-identity. (c) Mr. Greene shall not share his religious beliefs with the child if those beliefs cause the child emotional distress or worry about the child's mother or the child herself. Thus, for example, Mr. Greene may have pictures of Jesus Christ hanging on the walls of his residence. But, Mr. Greene may not take the child to religious services where they receive the message that adults or children who do not accept Jesus Christ as their Lord and Savior are destined to burn in hell. Further, he may not pray Christian prayers with the child, play Christian songs with the child present, read the Bible to the child or in any way attempt to indoctrinate the child into the Christian Faith. (d) Neither party is to talk negatively or derogatory about the other party's religion in the presence of the child, and there shall be no derogatory comments that could be construed as anti-Semitic of any nature, meaning Mr. Greene shall no longer refer to Ms. Greene's parents, who are Jewish, by any numbers or anything similar to that. Mr. Greene shall ensure that these rules are followed by persons whom he allows the child to be in the presence of or have contact with. No secondary person shall teach or read the Bible to the child, or pray any Christian prayers, or otherwise attempt to indoctrinate the child into the Christian faith.

The court's directions to Husband as to how to purge himself of contempt were sufficiently clear and certain.[9]

### Case No. A10A1464

3. Wife appeals on the ground that the trial court erred when it failed to find Husband in wilful contempt for violating the following provisions in the Settlement Agreement:

The parties are restrained and enjoined from doing, attempting to do, or threatening to do any act of injuring, maltreating, molesting, harassing, harming or abusing each other or the minor child of the parties in any manner whatsoever at any location. . . . Neither party shall attempt to alienate the child's natural affection for the other party or permit others to do so.

In addition to the plethora of evidence that Husband had exposed the

---

[9] Compare *Hughes v. Browne*, 217 Ga. App. 567, 568 (1) (459 SE2d 170) (1995) (trial court erred in holding mother in contempt of provision requiring her to "exert every reasonable effort," etc.).

child to the Christian faith, there was also evidence in the record that he told the child that he hated Wife; that he made up a derogatory rhyme about Wife's relatives; and that he referred to Wife as a "bitch" and "a pain in the ass" in front of the child. Wife argues at length that Husband's conduct was such that the trial court was required to hold him in wilful contempt of these provisions of the divorce decree.

As stated above, trial courts have broad discretion in ruling on a motion for contempt.[10] In the instant case, the trial court concluded in its order that although Husband made derogatory comments, which the court deemed reprehensible, he did show remorse and apologized to Wife and the court for making the comments. The court cautioned Husband that there was no excuse for the comments and that no inappropriate comment should ever be made again in the child's presence. The court also instructed Wife to file a motion for contempt "right away" if Husband failed to take heed of the court's instructions. The essence of civil contempt is wilful disobedience of a prior court order, and it is for the trial court to determine the credibility of the witnesses in ruling thereon.[11] The thorough trial court order shows that the court considered Husband's deplorable conduct but believed Husband's testimony that he was remorseful, resulting in the court's conclusion that he did not intend to violate wilfully the Settlement Agreement. Because we cannot conclude that the trial court abused its discretion in failing to find Husband in wilful contempt, Wife's enumerated error fails.[12]

*Judgments affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 1, 2010 — ▮▮▮▮▮▮

*Callner, Portnoy & Strawser, Charla E. Strawser*, for appellant. *Alan Mullinax, Tamela L. Adkins*, for appellee.

---

[10] *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (3) (686 SE2d 640) (2009).

[11] See *Saravia v. Mendoza*, 303 Ga. App. 758, 763 (2) (695 SE2d 47) (2010).

[12] But see *Pate v. Pate*, 280 Ga. 796, 798 (3) (631 SE2d 103) (2006) (no abuse of discretion where Husband found in wilful contempt because he substantially understated his gross income for five years, resulting in his failure to comply with child support obligations); *Richardson v. Levitt*, 275 Ga. 444, 447 (2) (569 SE2d 534) (2002) (no abuse of discretion where father held in wilful contempt for failure to comply with provision in settlement agreement to pay one-half of college education costs).