**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 22, 2019**

# In the Court of Appeals of Georgia

A19A1629. SULLIVAN v. HARPER.

HODGES, Judge.

Mary Julia Sullivan appeals the trial court's order clarifying a provision in the parenting plan incorporated into her divorce decree, finding her in contempt of certain provisions of the parenting plan, and awarding OCGA § 19-6-2 attorney fees to her ex-husband, John Anthony Harper. For the reasons that follow, we affirm in part, reverse in part, and remand with direction.

It is well-established that "[t]rial courts have 'broad discretion' in ruling on a motion for contempt, and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it[.]" (Citations omitted.) *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (3) (686 SE2d 640) (2009); see also *Earle v. Earle*, 312 Ga. App. 139, 140 (717 SE2d 720) (2011).

The record shows that Sullivan and Harper have two minor sons. Their older son, W. H., requires academic tutoring and various therapies for autism spectrum disorder. The parents divorced in 2016, and the divorce decree incorporated a consent final parenting plan, awarding legal custody of the boys to both parents and primary physical custody to Sullivan, with a regular visitation schedule for Harper. The parenting plan contained several provisions that are relevant here:

• Both parties have the right to consult with and receive "any and all information, records, paperwork, report cards or other documents concerning the children" directly from the children's schools, camps, health care providers, tutors, therapy facilities, and the like, and "the other shall not object to that party doing so."

• "The parent who has physical custody of the children shall be responsible for taking them to their therapy appointments (Mother will not schedule a therapy appointment for the children during Father's parenting time without Father's written approval) and the other parent shall not attend that appointment, unless the other parent's attendance is specifically requested by the therapist."

• "[N]either party will disparage the other parent to any teachers, coaches, activity providers, doctors, tutors, dentists, healthcare professionals, or anyone else who may be involved in the children's life in a similar capacity."

• Both parties "have the right to a full and complete disclosure of any and all information relating to the children, and to directly request information and documents from any educational, health, summer camp, extracurricular or religious providers for the children[,]" and "neither

will interfere with the other party's right to receive or obtain" such records.

In 2018, W. H. began seeing a new psychologist, who performed a comprehensive evaluation that required both parents to complete written questionnaires. It is undisputed that in her questionnaire, Sullivan expressed concern that Harper was "manipulative and childlike," lived with his "girlfriend" (who is actually his fiancé) and her two sons, emotionally abused and/or neglected W. H., and minimized the bullying W. H. experienced. In addition, under "Mental Health History," Sullivan wrote "Dad" next to drug/alcohol problems, domestic violence, physical/sexual abuse, ADHD, and anxiety.

After the evaluation, the psychologist scheduled feedback meetings to discuss W. H.'s needs and progress. Harper brought his fiancé to a feedback meeting. Sullivan complained, informed the psychologist that Harper was the "[o]nly" person authorized to attend the sessions, and insisted that Harper's "latest girlfriend" was not permitted to attend therapy sessions. At some point, Harper asked the psychologist for copies of W. H.'s records, including the questionnaire and other forms that Sullivan had completed. The psychologist sought permission from Sullivan to release

3

this information, and Sullivan told the psychologist she wanted "to receive consultation prior to [W. H.'s] documents being released." Sullivan allowed the psychologist to release the forms the next day.

Harper subsequently filed a contempt petition, alleging that Sullivan had violated the parenting plan, and by extension the divorce decree, by willfully disparaging him to the children's doctors and/or therapists, willfully interfering with his right to receive information from the children's doctors and/or therapists, and misrepresenting to the children's therapist the scope of her final decision-making authority regarding medical issues. According to Harper, such action caused him substantial inconvenience and stress and caused the children's therapist to view him in a negative light. Harper also requested attorney fees necessitated by filing the contempt action.

Following a hearing, the trial court entered an order finding that Sullivan was indeed in willful contempt of the parenting plan for (1) disparaging Harper to the children's doctors and/or therapists, (2) interfering with and/or objecting to Harper's right to receive any and all information (verbal or documentary) from the children's doctors and/or therapists; (3) wrongfully instructing the children's doctors and

4

therapists not to allow Harper's fiancé to attend meetings or appointments with Harper, and (4) advising the children's doctors and/or therapists to consult with Sullivan prior to releasing the children's records to Harper. In addition, the court

> clarifie[d] paragraph 4 of said "CONSENT FINAL ORDER ON CUSTODY AND PARENTING PLAN" to provide that [Sullivan] does *not* have the right to determine or dictate who [Harper] may bring to meetings or appointments which [Harper] may have individually (and without [Sullivan]), with any of the children's doctors and/or therapists, or any similar providers as outlined within paragraph 4. . . . [and] to provide that the children's doctors and/or therapists, or any other similar providers, do *not* need to consult, notify or advise [Sullivan] prior to releasing any documents, records or information immediately and directly to [Harper], upon his request.

(Emphasis in original.) According to the court, Sullivan's

> right to make final decisions on medical issues regarding the children, does *not* allow her to request that she be notified or consulted by the children's doctors and/or therapists prior to releasing documents and information to [Harper] nor does same allow her to determine or dictate who [Harper] may bring to meetings or appointments which [Harper] may have individually (and without [Sullivan]), with the children's doctors and/or therapists.

(Emphasis in original.) The court awarded Harper $12,324.00 in OCGA § 19-6-2 attorney fees and costs associated with bringing the contempt action.

Sullivan timely filed an application for discretionary appeal, arguing that the trial court's "clarification" was an impermissible modification of the divorce decree,

5

that the court erred by finding her in contempt, and that the fee award was not supported by required factual findings. We granted discretionary review, and this appeal followed.

1. Sullivan asserts that the trial court impermissibly modified the divorce decree during the contempt proceeding by changing the terms of the parenting plan to allow Harper to bring his fiancé or any third party to attend feedback sessions with his child's therapist and to allow Harper to schedule his own appointments for W. H. without Sullivan's permission.[1] According to Sullivan, the trial court's clarification effected a change of custody by granting Harper the right to make medical decisions when the parenting plan gives her "final decision-making authority on medical issues, which encompasses who may consult with the children's providers and when the children should be taken to be seen by doctors and therapists." We find no reversible error.

It is well-established that a trial court cannot modify custody determinations of a divorce decree in a contempt proceeding. See, e.g., *Duncan v. Mughelli*, 324 Ga. App. 465, 466 (751 SE2d 127) (2013) ("in a contempt proceeding, the trial court does

___

[1] "For convenience of discussion, we have taken the enumerated errors out of the order in which [Sullivan] has listed them. . . ." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

6

not have authority to modify a final order of custody, which must be brought as a separate action") (citation and punctuation omitted).

> A trial court *is* authorized, however, to interpret or clarify a divorce decree in the course of resolving contempt issues properly before it. The test for determining whether a trial court's ruling constitutes a proper clarification or impermissible modification of a divorce decree is whether the clarification or interpretation is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification.

(Citation and punctuation omitted; emphasis supplied.) *Hamilton v. Hamilton*, 292 Ga. 81, 82 (1) (734 SE2d 355) (2012); see also *Doritis v. Doritis*, 294 Ga. 421, 423-424 (3) (754 SE2d 53) (2014). "The trial court has the power to see that there be compliance with the intent and spirit of its decrees and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party" *Earle*, 312 Ga. App. at 141 (2).

Here, the parties were awarded joint legal custody, but if the parties could not agree after good faith consultation, the mother had the right to make "any and all final decisions" relating to certain issues, including medical issues.[2] While the parenting

---

[2] This provision comports with OCGA § 19-9-6 (5), which defines joint legal custody and also gives the court authority to designate one parent to have final decision-making authority when the parties are unable to agree on certain issues.

7

plan prohibited either parent from attending therapy-related appointments scheduled during the other parent's parenting time, unless required by the therapist, the plan was silent as to whether a parent could bring a third party to an appointment scheduled during that parent's parenting time. Sullivan argues that her decision-making authority permits her to exclude third parties, including Harper's fiancé, from attending feedback sessions with Harper that do not include W. H. The trial court, however, interpreted the parenting plan's silence on the issue as permission and ruled that Harper could bring a third party to his feedback appointments. "[T]he trial court's interpretation of the decree is reasonable and not so contrary to the intention of the parties as to amount to a modification." *Doritis*, 294 Ga. at 424 (3); see also *Hamilton*, 292 Ga. at 82 (1).

In another case addressing a parent's decision-making authority, this Court held that a trial court was permitted to clarify the extent to which a father's decision-making authority could encroach upon a mother's custodial time. *Earle*, 312 Ga. App. at 140-141 (2). In that case, we ruled that even though the father had final authority to make all decisions regarding a child's extracurricular activities, the mother could not be held in contempt for refusing to allow the child to participate in those

extracurricular activities during her custodial time. We held that the trial court's revised provision to that effect was a mere clarification, rather than a modification, of the parties' divorce decree. Id.

Likewise, the trial court's provision in this case "did not impermissibly modify the earlier decree but instead clarified the extent as to which [Sullivan's] decision making as to [the child's medical issues] could encroach upon [Harper's time with the therapist.]" Earle, 312 Ga. App. at 141 (2). We note that this is not a case in which the medical provider believes the presence of a third party will harm the child or a case where the child's actual medical care is affected; it is simply a case in which the mother is attempting to control the father's feedback sessions with the child's therapist. Given the circumstances in this case, the trial court's ruling is a permissible clarification rather than an impermissible modification.

In addition, although we agree with Sullivan's assertion that her final decision-making authority includes the right to determine when W. H. is taken to be seen by doctors or therapists,[3] we disagree that the trial court's clarification impermissibly

---

[3] In fact, the parenting plan specifically provides that Sullivan "will not schedule a therapy appointment for the children during Father's parenting time without Father's written approval," thus indicating Sullivan is responsible for scheduling all medical appointments for the children.

9

modified her decision-making authority by allowing Harper to schedule appointments for the child. The trial court's order indicates that Sullivan could purge herself of contempt by never "inform[ing] any of the children's doctors and/or therapists that [Harper] is not allowed to bring his fiancé to any meetings or appointments which [Harper] schedules *for himself* without [Sullivan]." (Emphasis supplied.) This statement, if it referred to appointments the father schedules for W. H. and not appointments the father schedules independently with the therapist to discuss the child, might well have been a modification of the parenting plan. However, it is undisputed that the sessions at issue were not therapy sessions for W. H., but feedback sessions attended by the therapist and W. H.'s parents without the child's presence.

In addition, the trial court's explicit clarification of the parenting plan merely states that paragraph 4 of the parenting plan "provide[s] that [Sullivan] does not have the right to determine or dictate who [Harper] may bring to meetings or appointments which [Harper] *may have individually* (and without [Sullivan]), with any of the children's doctors and/or therapists, or any similar providers as outlined within

10

paragraph 4." (Emphasis supplied.) Contrary to Sullivan's assertion, the clarification does not give Harper the right to schedule appointments for the child on his own.[4]

2. In two enumerations of error, Sullivan argues that the trial court erred by finding her to be in willful contempt of the parties' consent final order on custody and parenting by (a) willfully disparaging Harper, and (b) interfering with Harper's access to W. H.'s medical records and the ability of his fiancé to attend sessions with W. H.'s therapist. We agree in part and disagree in part.

As previously stated, "[a] trial court has broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused." (Citation and punctuation omitted.) *Cross v. Ivester*, 315 Ga. App. 760, 761 (728 SE2d 299) (2012). In making its determination, it is the trial court's duty to determine the credibility of the witnesses. See *Greene v. Greene*, 306 Ga. App. 296, 300 (3) (701 SE2d 911) (2010). However, the essence of civil

---

[4] Sullivan also argues that allowing Harper to schedule any meetings – even feedback meetings attended solely by him and the therapist – impermissibly increases her support obligation since both parties are responsible for one-half the uncovered medical and health care expenses incurred for or on behalf of the children. However, Sullivan has not produced evidence demonstrating that feedback sessions scheduled by Harper would be uncovered or that Harper could obligate her under the parenting plan to pay for one-half of those sessions without prior written approval.

contempt is willful disobedience of a prior court order, so "[i]n order for one to be held in contempt, there must be a willful disobedience of the court's decree or judgment." (Citation and punctuation omitted.) *Simpkins v. Simpkins*, 278 Ga. 523, 524 (1) (603 SE2d 275) (2004).

> Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather than implied. Indefiniteness and uncertainty in a judgment, decree, or order may constitute a good defense in proceedings for contempt based on the violation of such judgment, decree, or order. Furthermore, the very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands be clear and certain.

(Citation and punctuation omitted.) *Hughes v. Browne*, 217 Ga. App. 567, 568 (1) (459 SE2d 170) (1995).

a. *Disparagement*. The trial court found that Sullivan was in contempt for willfully disparaging Harper to their children's therapists/doctors. Sullivan maintains the evidence was insufficient to support the trial court's findings because the information she provided was solicited by the therapist so the therapist could appropriately diagnose her son and provide effective treatment. According to Sullivan, she did not intentionally criticize or disrespect Harper, but merely provided

12

the psychologist with "her subjective opinions and perception of stressors that might be affecting their child." We find no abuse of discretion.

Although the parenting plan does not define the word "disparage," it is a common word, and the trial court utilized its general, normal use. The court informed the parties that under the common definitions, "[t]o disparage means to speak of or to treat slightingly, to belittle, to ridicule, discredit, mock, demean, denounce." "Disparagement" also means "diminution of esteem or standing and dignity; disgrace, the expression of a low opinion of something; detraction." (Citation and punctuation omitted.) *Eichelkraut v. Camp*, 236 Ga. App. 721, 723 (1) (513 SE2d 267) (1999). Sullivan claims she was merely providing relevant information to a medical professional for the benefit of her child. However, the parenting plan in this case, consented to by both parties, specifically prohibits the parties from making disparaging remarks "to any . . . doctors, . . . healthcare professionals, or anyone else who may be involved in the children's life in a similar capacity." There is no exception for disparaging comments made in a therapeutic setting.

Moreover, Sullivan acknowledged at the contempt hearing that calling Harper "manipulative" could, in certain circumstances, be construed as disparaging. Likewise, calling Harper "childlike" could be construed as disparaging. While

13

Sullivan attempted at the contempt hearing to justify her responses, "it is for the trial court to determine the credibility of the witnesses" in ascertaining whether a party willfully disobeyed a prior court order. *Greene*, 306 Ga. App. at 300 (3). Whether Sullivan's comments were disparaging and whether she intended them to be disparaging involved factual and credibility determinations within the province of the trial court, and, here, evidence supports the trial court's findings that Sullivan intentionally disparaged Harper to the psychologist through at least some of her negative comments on the intake form.[5] See id. Absent gross abuse of the court's discretion, we will not reverse the trial court's decision that Sullivan was in contempt for willfully disparaging Harper to the psychologist.

b. *Interference with medical records*. Sullivan next asserts that the evidence was insufficient to support the trial court's finding that she willfully interfered with Harper's right to receive information from the children's doctors and/or therapists by (1) directing the psychologist to wait before releasing records to Harper and (2) objecting to Harper's request to bring a third party to appointments.

---

[5] We do not hold that a parent cannot assist a therapist by providing honest answers to questions solicited by a therapist so the therapist can appropriately diagnose and effectively treat a child. However, this can be done in a way that is not disparaging.

14

We first turn to Sullivan's claim with respect to the actual release of medical records. As stated previously, the parenting plan mandates in two separate sections that both parents have the right to receive "any and all information . . . or other documents concerning the children" and are entitled to "full and complete disclosure of any and all information relating to the children[.]" The plan specifically states that this information could be directly requested from the children's health care providers or therapy facilities. And, the parenting plan twice admonishes the parents to cooperate with this dissemination of information: (1) "the other [party] shall not object to that party" receiving the information, and (2) "neither [party] will interfere with the other party's right to receive or obtain" such information.

The record shows that W. H.'s psychologist contacted Sullivan seeking permission to release W. H.'s records to Harper: "I also talked with Ms. Sullivan about [W. H.'s] dad's request for his records." It is undisputed that rather than immediately permitting the release of the information as required by the parenting plan, Sullivan "requested to receive consultation prior to [W. H.'s] documents being released" to Harper. Even if Harper's request was specifically designed to receive copies of the questionnaires completed by Sullivan, Sullivan had no right to interfere

with Harper's receipt of the information in W. H.'s medical records. Though Sullivan permitted the medical records to be released the following day, the trial court was authorized to find Sullivan in willful contempt of the parenting plan "for interfering with and/or objecting to [Harper's] right to receive any and all information (verbal or documentary) from the children's doctors and/or therapists[.]" The trial court did not grossly abuse its discretion in finding Sullivan in contempt of the parenting plan in this respect.

However, we do find the trial court erred in finding Sullivan in contempt for refusing to allow Harper's fiancé to attend therapy sessions. The trial court concluded that Sullivan was in willful contempt of the parenting plan by "wrongfully instructing the children's doctors and therapists not to allow Harper's fiancé to attend meetings or appointments with [Harper], even separate from [Sullivan]." As Sullivan points out, however, the parenting plan was sufficiently vague on this point that the trial court found it necessary to clarify Harper's right to bring his fiancé. In the absence of a clear directive that either parent could bring a third party to the appointments, Sullivan could not be found in contempt in this regard. See *Hughes*, 217 Ga. App. at 568 (1) ("Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him,

16

and the command must therefore be express rather than implied.") (citation and punctuation omitted). Therefore, we conclude that the trial court abused its discretion in finding Sullivan in contempt of the indefinite language contained in the parenting plan and reverse on this basis.

3. Sullivan's final argument is that the superior court erred by issuing a fee award under OCGA § 19-6-2 without making the requisite factual findings concerning the parties' relative financial circumstances. Pretermitting whether this argument has merit, based on our conclusion that the trial court erred in finding Sullivan in contempt for her refusal to allow Harper's fiancé to attend therapy sessions, the attorney fee award is hereby vacated and the case remanded for the trial court to reconsider the attorney fee award in a manner consistent with this opinion.

*Judgment affirmed in part, reversed in part, and remanded with direction. Dillard, P. J., and Gobeil, J., concur.*