**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**May 26, 2021**

# In the Court of Appeals of Georgia

A21A0700. A21A0704. VANVLERAH v. VANVLERAH.

BARNES, Presiding Judge.

These companion appeals arise out of divorce and contempt proceedings. In Case No. A21A0700, following the grant of his application for discretionary appeal, Andrew Merle VanVlerah ("husband") appeals from the final judgment and divorce decree awarding Katelynn VanVlerah ("wife") primary physical custody of their children and child support and granting him supervised visitation. The husband argues that the trial court erred in failing to make findings of fact and conclusions of law, which the husband requested before the court issued its judgment; erred in failing to adopt a permanent parental plan and incorporate it into the judgment; erred in failing to reference, adopt, or incorporate a child support worksheet into the judgment; and erred in considering evidence presented at the temporary hearing in

making its final custody determination. In Case No. A21A0704, the husband appeals the trial court's order denying his motion for contempt against the wife. He contends that the evidence demanded a finding by the trial court that his wife was in willful contempt of the court's temporary order and that the court improperly relied on Uniform Superior Court Rule ("USCR") 6.4 (B).

As discussed below, in Case No. A21A0700, we vacate the trial court's final judgment and remand the case with direction that the court make findings of fact and conclusions of law and incorporate a parenting plan and child support worksheet into the judgment. In Case No. A21A0704, we affirm the trial court's contempt order.

*Case No. A21A0700*

1. Viewed in the light most favorable to the trial court's rulings,[1] the evidence showed that the husband and wife were married in 2012 and had five children together. The family lived in Jefferson County, Georgia, during the marriage. In early October 2018, the husband and wife separated, and the wife moved with the children to her mother's home in Michigan.[2]

---

[1] See *McDonald v. McDonald*, 289 Ga. 387, 387 (1) (711 SE2d 679) (2011).

[2] The husband, like the wife, was from Michigan.

2

Later in October 2018, the wife filed a complaint for divorce in the Superior Court of Jefferson County seeking primary legal and physical custody of the children, child support, alimony, equitable division of the marital property, and attorney fees. The husband answered and filed a counterclaim for divorce. Among other things, the husband sought joint legal custody and primary physical custody of the children.

Following a hearing, the trial court entered a temporary order in March 2019 awarding the parents joint legal custody of the children, designating the wife as the primary physical custodian of the children, and granting the husband supervised visitation in Michigan. Subsequently, in March 2020, the trial court conducted a bench trial on the divorce petition and counterclaim. In August 2020, before the trial court issued its final judgment and divorce decree, the husband requested that the court make written findings of fact and conclusions of law pursuant to OCGA § 9-11-52.

On September 11, 2020, the trial court entered its final judgment and decree of divorce. The trial court awarded the parties joint legal custody of their five minor children, designated the wife as primary physical custodian, and granted the husband supervised visitation. The court awarded the wife child support, alimony, and certain personal property that she had sought as part of the equitable division of the marital

3

property. The judgment did not include any findings of fact or conclusions of law and did not incorporate a parenting plan or child support worksheet.

(a) The husband argues that the trial court erred in failing to include findings of fact and conclusions of law in the final judgment pursuant to OCGA § 9-11-52 (a). We agree.

OCGA § 9-11-52, which is found in the Civil Practice Act, provides in part:

> (a) In ruling on interlocutory injunctions and in all nonjury trials in courts of record, the court shall upon request of any party made prior to such ruling, find the facts specially and shall state separately its conclusions of law. If an opinion or memorandum of decision is filed, it will be sufficient if the findings and conclusions appear therein. Findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

> (b) This Code section shall not apply to actions involving uncontested divorce, alimony, and custody of minors . . . .

"Findings of fact and conclusions of law enable the parties to specify the errors the trial court purportedly made, and enable the appellate court to review the judgment adequately and promptly." *Grantham v. Grantham*, 269 Ga. 413, 414 (1) (499 SE2d 67) (1998).

OCGA § 9-11-52 (a) applies to contested family law cases such as the present one. See *Arthur v. Arthur*, 293 Ga. 63, 65 (2) (a) (743 SE2d 420 (2013) (applying OCGA § 9-11-52 (a) to final judgment entered in contested divorce case); *Sadler v. Rigsby*, 338 Ga. App. 549, 551 (1) (790 SE2d 639) (2016) (applying OCGA § 9-11-52 (a) to child custody dispute); *Warren v. Smith*, 336 Ga. App. 342, 344 (785 SE2d 25) (2016) (applying OCGA § 9-11-52 (a) to child custody dispute). See generally OCGA § 19-5-8 ("The same rules of pleading and practice applicable to ordinary civil actions shall apply to actions for divorce, alimony, and custody of minor children, except as otherwise specifically provided in this chapter [addressing divorce proceedings]."). And because the husband made his request for findings of fact and conclusions of law under OCGA § 9-11-52 (a) before the trial court entered its judgment, his request was timely.[3] See *Payson v. Payson*, 274 Ga. 231, 235 (2) (552 SE2d 839) (2001) (concluding that "a party's 9-11-52 (a) request for findings and

---

[3] It is true that OCGA § 19-9-3 (a) (8) provides that upon request by a party "*on or before the close of evidence* in a contested hearing," the trial court is required to set forth specific findings of fact in a permanent court order awarding child custody. (Emphasis supplied.) But that statute is not the exclusive statutory avenue for requesting findings and conclusions in cases involving child custody. "[F]ollowing the enactment of OCGA § 19-9-3 (a) (8), Georgia courts have continued to apply OCGA § 9-11-52 to contested family law matters, including child custody cases." *Sadler*, 338 Ga. App. at 551 (1).

5

conclusions in a bench trial is timely if made before the judgment is entered"); *Sadler*, 338 Ga. App. at 550 (1) (concluding that request for findings and conclusions under OCGA § 9-11-52 (a) was timely when made prior to trial court's written ruling). The trial court therefore was required to "find the facts specially and . . . state separately its conclusions of law" in its final judgment as timely requested by the husband. OCGA § 9-11-52 (a). The trial court, however, failed to do so.

Because the trial court erred by not including findings of fact and conclusions of law in its final judgment, we vacate the judgment and remand with direction that the court make sufficient findings and conclusions to support its rulings on the contested family law matters at issue in this case. See *Arthur*, 293 Ga. at 66 (2) (a); *Grantham*, 269 Ga. at 414 (1); *Sadler*, 338 Ga. App. at 551 (1).

(b) The husband also maintains that the trial court erred in failing to adopt and incorporate a permanent parenting plan into its final judgment. Again, we agree.

OCGA § 19-9-1 (a) provides in part: "The final order in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan as further set forth in this Code section." "[T]he parenting plan must include several details beyond custody and visitation, including, among many things, the rights of both parents to access the child's records and information

6

related to education, health, health insurance, extracurricular activities, and religious communications." *Williams v, Williams*, 301 Ga. 218, 224 (3) (800 SE2d 282) (2017). See OCGA § 19-9-1 (b) (addressing requirements for parenting plan).

The final judgment entered in the present case did not incorporate or make any reference to a permanent parenting plan, and it did not otherwise include the specific details required under OCGA § 19-9-1 (b).

> On remand, therefore, the trial court should work with the parties to formulate an acceptable parenting plan and either incorporate the same into its custody order or enter the plan separately. In this regard, we note that . . . there may be additional, more recent evidence available for the trial court to consider both with respect to visitation and the required parenting plan.

*Mashburn v. Mashburn*, 353 Ga. App. 31, 48 (1) (b) (ii) (836 SE2d 131) (2019). See *Williams*, 301 Ga. at 224 (3) (vacating final judgment for failure to incorporate a permanent parenting plan and remanding the case for compliance with OCGA § 19-9-1); *McFarlane v. McFarlane*, 298 Ga. 361, 361-362 (2) (782 SE2d 29) (2016) (vacating a custody modification order for failure to enter a permanent parenting plan and remanding the case for compliance with OCGA § 19-9-1).

(c) The husband next contends that the trial court erred by failing to reference, adopt, or incorporate a child support worksheet into the final judgment. We agree.

"OCGA § 19-6-15 provides a process for calculating child support which, pursuant to subsection (m), requires the necessary information used in that calculation to be recorded on the child support worksheet." (Citation and punctuation omitted.) *Moore v. Moore*, 346 Ga. App. 58, 61 (4) (815 SE2d 242) (2018). The trial court should attach the completed child support worksheet and any applicable schedules to the final judgment, incorporate those documents by reference into the judgment, or enter the pertinent information from those documents directly into the judgment. Id. See OCGA § 19-6-15 (m) (1).

Here, a child support addendum was attached to the final judgment, and the addendum recited that a child support worksheet and schedules were "attached hereto or filed contemporaneously herewith" and were "a part of this addendum." However, no worksheets or schedules were in fact attached to the final judgment or child support addendum. Additionally, while proposed child support worksheets were filed by the husband several months before entry of the final judgment, there were no worksheets filed contemporaneously with the final judgment and addendum, and it is unclear whether or to what extent the trial court considered or relied upon the

8

worksheets filed by the husband in its child support determination. Accordingly, on remand, the trial court should attach the applicable child support worksheets and any appropriate schedules to the final judgment, incorporate those documents by reference into the judgment, or enter the information directly from those documents into the judgment. See *Moore*, 346 Ga. App. at 61 (4).

(d) Because of our holding in Division 1 (a), we need not address the husband's remaining argument that the trial court erred in considering evidence presented at the temporary hearing in making its final custody determination. See *Sadler*, 338 Ga. App. at 552 (2).

*Case No. A21A0704*

2. The husband also challenges the trial court's denial of his motion for contempt against his wife for her alleged willful violation of the visitation provision of the temporary order.

Construed in favor of the trial court's ruling on the contempt motion,[4] the record showed the following. As previously noted, the trial court entered a temporary order in the divorce proceedings in March 2019. With respect to visitation, the temporary order stated that the husband "may have supervised visitation with the

_____

[4] See *McDonald*, 289 Ga. at 387 (1).

minor children in Hillsdale County, Michigan which is to be supervised at all times by CASA or a similar supervised visitation agency."

Following entry of the March 2019 temporary order, the husband did not visit the children until December 2019. That month, the husband traveled to Michigan and had a two-hour supervised visit with the children at a visitation center called the Family Connection Center ("Center"). The father had two additional supervised visits with the children at the Center, one in January 2020 and another in February 2020.

Subsequently, in response to the public health crisis resulting from the COVID-19 pandemic,[5] the Center temporarily suspended all visitation sessions. The Center thereafter reopened with certain safety protocols in place. In April 2020, the Center contacted the wife about scheduling a supervised visitation between the children and the husband, but she declined to schedule a visit at that time because of her concerns over COVID-19. For the same reason, the wife declined to schedule visits when contacted by the Center in May, June, and July.

---

[5] "The respiratory disease caused by the novel coronavirus, known as 'COVID-19,' is an infectious virus that can spread from person-to-person and can result in serious injury or death." Ga. Exec. Order 03.14.20.01. "It would be a colossal understatement to say that the COVID-19 pandemic has had far-reaching effects. It has changed everything from the way that friends and families interact to the way that businesses and schools operate to the way that courts hear and decide cases." *Swain v. Junior*, 961 F3d 1276, 1280 (11th Cir. 2020).

In August 2020, the husband filed a motion for contempt, alleging that the wife was in willful contempt of the visitation provision found in the temporary order. At the hearing on the motion conducted by videoconference in September 2020,[6] the wife testified that she declined to schedule visitations at the Center when contacted in April, May, June, and July 2020 because she was worried about the number of COVID-19 infections and believed that the risk to her children was too great. The wife acknowledged that the Center had implemented certain safety protocols, but she testified that she believed that social distancing would not be possible with five young children and that her children would not keep on masks. The wife further testified that "this whole COVID thing has been so crazy," that she had been unsure "what [she] was supposed to be doing," that she was worried that visitation would be unsafe, and that she had tried to follow the recommendations of state officials that she had learned about on the news, including staying at home and avoiding contact with others. The wife also testified that all of her communications about visitation had

[6] On March 14, 2020, because of the COVID-19 pandemic, the Chief Justice of the Supreme Court of Georgia issued an "Order Declaring Statewide Judicial Emergency" pursuant to OCGA § 38-3-61. Among other things, the emergency order provided that "[t]o the extent that court proceedings are held, they should be done in a manner to limit the risk of exposure, such as by videoconferencing, where possible." The emergency order has been extended several times, with certain modifications.

been with Center personnel and that because the husband "wasn't communicating through my lawyer that it was an issue," she had believed that the delay in visitation "wasn't an issue and we're just gonna do visits after COVID is done when things settle down." Additionally, the wife testified that when the Center contacted her in August 2020,[7] she agreed to reestablishing supervised visitation, but that it takes several weeks for the Center to schedule visitation dates, and the Center ultimately set the date of October 3, 2020 for the next visitation. No other witnesses testified at the contempt hearing.

Following the hearing, the trial court entered its order denying the husband's motion for contempt. The trial court found that the wife had violated the supervised visitation provision of the temporary order, but that her disobedience was not willful "due to the state of the pandemic, and fear that has gripped a large portion of the Nation." The court found that the wife's "concerns are realistic and fueled by the media and guidelines in the State of Michigan." The trial court further concluded that "prior to filing a motion for contempt, the law requires counsel to communicate in good faith pursuant to USCR 6.4, which was not done here," and that the wife's

---

[7] The wife testified that her communication with the Center in August 2020 was before August 18, 2020, when the contempt motion was filed.

violation of the visitation provision was not willful for that additional reason. Lastly, the trial court ruled that although the court was not holding the wife in contempt, the husband

> shall be entitled to make-up time to account for the visitation periods missed. Therefore, [the husband] may exercise visitation twice per month for the months from November, 2020 through February, 2021. The parties shall observe whatever rules or restrictions, no more and no less, which are in place by the center supervising visitation in Michigan. As long as the rules and guidelines of the supervision center are followed, the [wife] needs to produce the children as scheduled for visitations.

(a) The husband contends that the trial court abused its discretion in denying his contempt motion because the evidence demanded a finding that the wife acted in willful contempt of the temporary order. We disagree.

> To hold a party in contempt, a trial court must find that the party willfully disobeyed a court order. In ruling on a contempt motion, a trial court is vested with wide discretion in deciding both whether the court's orders have been violated and how such infringements should be treated, and we will not disturb the court's determinations on these issues absent an abuse of that discretion. Indeed, given the wide latitude afforded to the trial court, we will affirm a contempt ruling if there is any evidence in the record to support it.

13

(Citations, punctuation, and footnotes omitted.) *Cousin v. Tubbs*, 353 Ga. App. 873, 875 (1) (840 SE2d 85) (2020). See *Friday v. Friday*, 294 Ga. 687, 691 (2) (755 SE2d 707) (2014); *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (3) (686 SE2d 640) (2009); *Higdon v. Higdon*, 321 Ga. App. 260, 263 (1) (b) (739 SE2d 498) (2013).

There was some evidence to support the trial court's finding that the wife's disobedience of the visitation provision of the temporary order was not willful. In this regard, there was evidence that the wife sincerely believed that, as a result of the unprecedented COVID-19 pandemic and the uncertainty associated with the spread of the virus, scheduling in-person visitation at the Center during the months in question would potentially expose her five young children to physical harm. Moreover, there was some evidence that the wife was under the mistaken impression that the husband did not oppose delaying visitation until the COVID-19 situation improved. Additionally, there was evidence that the wife had taken steps to come into compliance with the temporary order and restart the supervised visitations. In light of this evidence, we cannot say that the trial court abused its discretion in finding that the wife's disobedience of the visitation provision did not rise to the level

of willful contempt.[8] See *Beckham v. O'Brien*, 176 Ga. App. 518, 521-522 (336 SE2d 375) (1985) (concluding that mother's disobedience of supervised visitation provision of divorce decree fell short of willful contempt, where unforeseen circumstances resulted in mother disobeying order to protect child from potential physical and psychological harm). See also *Greene v. Greene*, 306 Ga. App. 296, 300 (3) (701 SE2d 911) (2010) (upholding trial court's finding that father's violation of settlement agreement incorporated into divorce decree was not willful and emphasizing that "trial courts have broad discretion in ruling on a motion for contempt"); *Saravia v. Mendoza*, 303 Ga. App. 758, 763 (2) (695 SE2d 47) (2010) (trial court did not abuse its discretion in finding that mother's disobedience of custody provision was not willful, where father had been granted primary physical custody of the children, but father continued to allow the children to stay with the mother out-of-state and never

---

[8] The husband also asserts that the wife's fear of COVID-19 as a basis for denying visitation was unjustified because she could have arranged for the husband to have remote visitation with the children by videoconference, thereby eliminating any risk of virus transmission. His assertion is unpersuasive in light of the record in this case. When asked about videoconferencing at the contempt hearing, the wife testified that she wanted visitation to be "through a service where it can be regulated" rather than through private videoconference, and, as previously noted, the visitation provision in the temporary order only authorized visitation "in Hillsdale County, Michigan[,] . . . supervised at all times by CASA or a similar supervised visitation agency." Moreover, there is no evidence in the record that the Center offered supervised visitation through videoconferencing.

15

communicated to the mother that he wished for her to surrender primary physical custody of the children to him).

(b) The husband also argues that the trial court abused its discretion in denying his contempt motion because the court erroneously relied on USCR 6.4 (B), which he contends applies only to discovery disputes.[9] We agree with the husband that the

---

[9] USCR 6.4, entitled "Failure to Make Discovery and Motion to Compel Discovery," provides:

(A) Motions to compel discovery in accordance with OCGA § 9-11-37 shall:

(1) Quote verbatim or attach a copy as an exhibit of each interrogatory, request for admission, or request for production to which objection is taken or to which no response or insufficient response is provided;

(2) Include the specific objection or response claimed to be insufficient;

(3) Include the grounds for the objection (if not apparent from the objection); and,

(4) Include the reasons supporting the motion. Any objections shall be addressed to the specific interrogatory, request for admission, or request for production and shall not be made generally.

(B) Prior to filing a motion seeking resolution of a discovery dispute, counsel for the moving party shall confer with counsel for the opposing party and any objecting person or entity in a good faith effort to resolve the matters involved. At the time of filing the motion, counsel shall also file a statement certifying that such conference has occurred and that the effort to resolve by agreement the issues raised failed. This rule also applies to motions to quash, motions for protective order and cases where no discovery has been provided.

16

requirement for counsel to confer with opposing counsel imposed by USCR 6.4 (B) only applies to certain discovery disputes and thus was inapplicable in the context of the contempt motion. See *Greenbriar Homes v. Builders Ins.*, 273 Ga. App. 344, 346 (3) (615 SE2d 191) (2005) (discussing scope of USCR 6.4 (B)). But "a trial court's ruling on a contempt petition will be affirmed if right for any reason," *Park-Poaps v. Poaps*, 351 Ga. App. 856, 861 (1) (833 SE2d 554) (2019), and, as explained supra in Division 2 (a), the trial court was entitled to find that the mother's disobedience of the visitation provision did not constitute willful contempt in light of her sincere fear over her children's safety resulting from the COVID-19 pandemic. Hence, the trial court did not abuse its discretion in denying the husband's motion to hold the wife in contempt. See id.

*Judgment affirmed in A21A0704. Judgment vacated and case remanded with direction in A21A0700. Gobeil and Markle, JJ., concur.*