**SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A1763, A12A2145, A12A2188. HIGDON v. HIGDON.

BARNES, Presiding Judge.

These related appeals arise from custodial issues involving Alex and Jane Higdon's four children following their divorce.[1] We note as a preliminary matter that Dr. Higdon's appeals are deficient in several respects. He has failed to provide a concise statement of the applicable standard of review as required by Court of Appeals Rule 25 (a) (3), and has not stated the method of preservation of his enumerations of error as required by Rule 25 (a) (1). Moreover, even though Dr. Higdon's briefs contain extensive statements of facts, few, if any, of these facts are supported with citations to the record or transcript in violation of Court of Appeals Rule 25 (a) (1). We recognize that Dr. Higdon is acting pro se; nevertheless, "that

---

[1] Dr. Higdon's motion for new trial is still pending in the divorce action.

status does not relieve him of the obligation to comply with the substantive and procedural requirements of the law, including the rules of this [C]ourt." *Simon v. City of Atlanta*, 287 Ga. App. 119, 120 (1) (650 SE2d 783) (2007).

In Case No. A12A1763, Dr. Higdon appeals from the order of the trial court denying his multiple motions to find Mrs. Higdon in contempt for allegedly violating provisions in an earlier temporary order. In Case No A12A2145, Dr. Higdon appeals from the order of the trial court denying his habeas corpus petition to restore his visitation and custody rights. And, in Case No. A12A2188, Dr. Higdon appeals the trial court's order prohibiting him from future filings without permission of the court.[2]

For the reasons that follow, we affirm the trial court's judgment in Cases No. A12A1763 and A12A2188, and dismiss as moot Case No. A12A2145.

Case No. A12A1763

In this appeal, we review Dr. Higdon's challenge to the trial court's order addressing the parties' motions for contempt. We initially transferred this appeal to the Supreme Court, which determined that the appeal did not invoke its divorce and

---

[2] Dr. Higdon has also filed other discretionary applications related to his divorce in this Court – A12D0163 and A12D0140 – which were denied.

2

alimony jurisdiction and transferred it back to this Court. In its order, the Supreme Court explained that because it had "previously denied the application addressing the child support contempt . . . the only remaining issue is applicant's contention that the trial court erred in not holding [Mrs. Higdon] in contempt of the child custody provisions." Thus, as "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be,"OCGA § 9-11-60 (h), we only consider whether the trial court erred in denying Dr. Higdon's motion to hold Mrs. Higdon in contempt for violating certain child custody provisions in the temporary order. See *Egerton v. Jolly*, 133 Ga. App. 805, 806 (1) (212 SE2d 462) (1975).

The facts establish that the Higdons filed several motions for contempt against each other related to the custody and support issues arising from provisions in a February 4, 2011 temporary order. The order incorporated a June 9, 2010 temporary consent order, and provided, among other things, that the parents would have temporary joint custody of the four children and shared medical decision-making for the children. The order also provided the mother with child support of $1859, and divided the couples' possessions from the marital residence. The final judgment and

3

divorce decree was filed on June 13, 2011, and per the parenting plan, Mrs. Higdon was granted final decision making on healthcare, education and extracurricular issue, and primary physical custody. Dr. Higdon filed a motion for new trial.

On August 30, 2011, after a hearing, the court entered an order on the parties' various contempt motions.[3] It granted Mrs. Higdon's motion to hold Dr. Higdon in contempt for failing to pay child support, but denied Dr. Higdons' several motions to hold Mrs. Higdon in contempt for alleged violations of the temporary order.

1. In this appeal, we only consider whether the trial court erred in its refusal to hold Mrs. Higdon in contempt and whether it erred in finding that Dr. Higdon "came to court with unclean hands."

"[A] trial court has broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused." *Hunter v. Hunter*, 289 Ga. 9, 11 (4) (709 SE2d 263) (2011). "Thus, the

---

[3] The trial court acknowledged the complicated procedural posture of the case in that Dr. Higdon's motion for new trial from the final judgment and divorce decree acted as supersedeas to any further actions related to the custody of the children. Rather than apply the temporary order which granted Dr. Higdon joint legal custody of the children, the trial court excepted from supersedeas the child custody provisions in the final judgment and divorce decree pursuant to OCGA § 9-11-62 (b), thus permitting the trial court's final ruling on child custody to control.

question of whether a contempt has occurred is for the trial court[.]" *Gallaher v. Breaux*, 286 Ga. App. 375, 377 (650 SE2d 313) (2007).

a. Dr. Higdon contended that the trial court erred in failing to cite Mrs. Higdon for contempt for failing to obtain certain medical evaluations and treatments for the children as ordered in an February 4, 2011 temporary order and in finding that he "came to court with unclean hands."

Mrs. Higdon testified at the hearing on the contempt motions that she had received only about $1,000 total in child support over the previous six months, although she had been awarded $1,858 per month in child support. She also testified that Dr. Higdon was responsible for half of the uncovered medical expenses, but would pay his half only sporadically. In that respect, she testified that she had paid $7,317 in medical expenses for the children, but Dr. Higdon had not reimbursed her for his half of those expenses.

The trial court found that Dr. Higdon exhibited unclean hands by not paying child support or half of the uncovered medical expenses, which directly contributed to the contempt claim he had brought against Mrs. Higdon for her alleged failure to obtain medical treatment for the children. Regarding the medical treatments, the trial court held that Dr. Higdon's actions had "resulted in [Mrs. Higdon's] chosen doctor

5

. . . declin[ing] to treat the parties' children." The trial court quoted from a letter from the doctor that the cancellation was due to the "'complexity' of the issues surrounding the family," and "most notably" due to Dr. Higdon's "inappropriate and confrontational behavior" that had been experienced by her office staff. The trial court also found that Dr. Higdon's failure to pay child support contributed to the Mrs. Higdon's inability to obtain the medical evaluations and treatment.

"Unclean hands" is a shorthand reference to OCGA § 23-1-10, which states, "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." See *Dobbs v. Dobbs*, 270 Ga. 887, 888 (515 SE2d 384) (1999) (noting that OCGA § 23-1-10 "embodies both the 'unclean hands' doctrine and the concept that 'one will not be permitted to take advantage of his own wrong.'" (citations omitted). Under the unclean hands doctrine, wrongdoing must be directly related to the claim against which unclean hands is asserted. *Adams v. Crowell*, 157 Ga. App. 576, 577 (2) (278 SE2d 151) (1981).

"Given the foregoing, no abuse of discretion resulted upon the trial court's refusal to [hold Mrs. Higdon in contempt as to the medical treatments] under the

doctrine of unclean hands." *Matrix Fin. Servs. v. Dean*, 288 Ga. App. 666, 670 (b) (1) (655 SE2d 290) (2007).

b. Dr. Higdon also claimed that Mrs. Higdon was in contempt for failing to deliver to him certain personal property from the marital residence as required by the final divorce decree. At the contempt hearing, Dr. Higdon alleged that he still had "thousands of dollars worth of possessions" at the marital residence and that Mrs. Higdon was in violation of the standing order because she would not allow him to get his possessions. But he also acknowledged that he had never specifically identified what possessions he claimed that were still at the marital property.

The trial court ordered Mrs. Higdon to allow Dr. Higdon to pick up any personal property that remained at the marital residence upon receipt of his written list of items, but declined to hold her in contempt. Given Dr. Higdon's vague testimony, we find no abuse of the trial court's discretion in refusing to find Mrs. Higdon in contempt under these circumstances. This is particularly true given that the trial court ordered Dr. Higdon to make a list of his property and further directed Mrs. Higdon to have the property available for his retrieval on a certain date. See *Dept. of Human Resources v. Cowan*, 220 Ga. App. 230, 232 (2) (469 SE2d 384) (1996) ("The

7

trial court's discretion in [contempt] matters is broad[,] and its decision will be upheld if there is any evidence to support it.") (citation and punctuation omitted).

c. Finally, Dr. Higdon asserted that Mrs. Higdon was in contempt for improperly dropping him from her medical insurance even though their divorce was not final.

"To hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment." *Beckham v. O'Brien*, 176 Ga. App. 518, 522 (336 SE2d 375) (1985). Here, the record demonstrates that under the provisions of the "Automatic Domestic Standing Order" applicable in this case, the parties were "enjoined and restrained from altering, suspending, or terminating any active insurance coverage." As the trial court found, the reason the divorce was not final was because Dr. Higdon filed a motion for new trial after Mrs. Higdon notified her insurance company. Thus, the court ordered Mrs. Higdon to notify her insurance company that the divorce was not yet final and to have Dr. Higdon's coverage reinstated until it was, but declined to find her in contempt under the circumstances. The record contains evidence that Mrs. Higdon's conduct was not a willful violation of the standing order, and the trial court did not abuse its discretion in denying Dr. Higdon's motion for contempt based on the insurance issue.

Case No. A12A2145

2. In this appeal, we consider whether the trial court erred in applying a special provision in the parenting plan of the final divorce decree which provided that Dr. Higdon's visitation would be suspended for six months or until either party obtained an order modifying visitation if Mrs. Higdon became aware of any of the following:

> a) Father directly or indirectly performs any medical testing or treatment or assessments without the agreement and/or knowledge of Mother; or
> b) Father's action is contrary to the direction or recommendations of any of the children's doctor's treatment plans.

When Mrs. Higdon discovered that Dr. Higdon had requested medical testing kits for the children without her knowledge or permission, she notified Dr. Higdon in writing via her attorney that she was suspending his visitation. Specifically, her attorney notified Dr. Higdon that:

> Mrs. Higdon is exercising her right under the Final Judgment and Decree and Parenting Plan Order to suspend your parenting time and visitation rights with the children pursuant to p. 8-9 of the Parenting Plan. As you already know, Mrs. Higdon has discovered that you have been doing secret testing on the children. You have . . . requested test kits for the children without informing Mrs. Higdon or consulting with Mrs. Higdon. . . . Please do not attempt to pick up the children for your

9

visitation time. Mrs. Higdon will not release them to you, and in light of your behavior, she is not required to do so.

Dr. Higdon filed a writ of habeas corpus to enjoin the mother from "illegally detaining the children" and to restore his visitation. After a hearing on the petition, the trial court entered an order denying the petition to the extent that it could be construed as an attempt to change custody or any provision of the custody agreement pursuant to OCGA § 19-9-23 (d). The court also held, however, that Dr. Higdon's co-parenting times "otherwise denied under the special provision" would be resumed "provided that during such co-parenting time [Dr. Higdon] is to be supervised by a third party." The trial court's order further provided that the Dr. Higdon's supervised visitation was effective immediately, and that his normal visitation would be restored three months later, on June 1, 2012.

Dr. Higdon filed his appeal in the Supreme Court of Georgia, which then transferred the case to this Court upon finding that per OCGA § 19-9-23 (d), its habeas jurisdiction was not invoked.[4] See *Munday v. Munday*, 243 Ga. 863 (257 SE2d

---

[4] "The use of a complaint in the nature of habeas corpus seeking a change of child custody is prohibited." OCGA § 19-9-23 (d).

282) (1979) (habeas petition seeking change in visitation rights was improper use of habeas to seek a change of custody and case was transferred to the Court of Appeals).

Dr. Higdon enumerates multiple errors regarding the trial court's conduct during the hearing on his habeas petition, and also challenges the trial court's custody and visitation rulings, including the application of the special provision allowing for the automatic suspension of his visitation rights upon certain events. As the trial court found, to the extent that Higdon was attempting to change the custody provisions of the final order and decree, OCGA § 19-9-23 (d) specifically prohibits the use of a complaint in the nature of habeas corpus to seek a change of child custody. *Munday v. Munday*, 243 Ga. at 863-864. Further, for the reasons set forth below, this appeal is dismissed as moot and we need not determine if the provision suspending Dr. Higdon's visitation was invalid as a self-executing change of custody provision. See *Johnson v. Johnson*, 290 Ga. 359, 360 (721 SE2d 92) (2012).

Pursuant to the order denying Higdon's habeas petition, Higdon's rights to visitation under the final judgment and decree were restored effective June 1, 2012, and thus, whether Dr. Higdon's visitation was properly suspended before then became moot. OCGA § 5-6-48 (b) (3). See *Babb v. Putnam County*, 269 Ga. App. 431 (605 SE2d 33) (2004) ("It is a rather fundamental rule of both equitable jurisprudence and

11

appellate procedure, that if the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot.") (Citations and footnote omitted.)

Thus, as Dr. Higdon regained his suspended visitation rights, there is nothing for this Court to review, because "the activity sought to be enjoined has already ceased." *City of Comer v. Seymour*, 283 Ga. 536, 537 (661 SE2d 539) (2008). Accordingly, because the matter is moot, the appeal is dismissed. OCGA § 5-6-48 (b) ("Where the questions presented have become moot" the appeal "shall be dismissed.").

3. The remaining enumerations of error in Case No. A12A2145 have been considered and are either moot or have no merit.

Case No. A12A2188

4. In this appeal, Dr. Higdon challenges an order of the trial court prohibiting him from future filings without first gaining permission from the court. In its April 23, 2012 order the trial court noted that, although Dr. Higdon had filed a motion for new trial from the final judgment and decree of divorce entered on June 13, 2011,

to date, almost a year later, and despite efforts to set the matter down on the Court's calendar, this Court has not been able to conduct a hearing

12

on the same. [Dr. Higdon] has precluded this Court from finalizing the above-styled action. He has continuously and relentlessly filed frivolous lawsuits, motions, and other actions and legal documents. [Dr. Higdon] has asserted claims and positions in these filings, with respect to which there existed an absence of any justiciable issue of law or fact, which [Dr. Higdon] could not have reasonably believed that a court would accept said claims and/or positions.

The trial court directed that before filing any new actions, motions or petitions, Dr. Higdon must satisfy certain conditions:

1) [Dr. Higdon] must file a "Request to File," in the Clerk of Court's Office; 2) attach the document he wishes to file to the "Request," as an "Exhibit"; 3) attach to any such pleading, motion, petition, or any other filing, a copy of this Order; and 4) present a courtesy copy of the Request, along with the Exhibit to the Judge's Chambers. . . .

Although Dr. Higdon contends that the trial court abused its discretion in issuing a "global pre-filing" injunction, we do not agree.

"No person is free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose." *In re Carter*, 235 Ga. App. 551, 552 (1) (510 SE2d 91) (1998)."This limitation on [Higdon's] ability to file pro se lawsuits does not totally deprive [him] of meaningful access to the courts and is reasonable under the circumstances." *Smith v. Adamson*, 226 Ga.

13

App. 698, 700 (3) (487 SE2d 386) (1997). See *Howard v. Sharpe*, 266 Ga. 771, 772-773 (1) (470 SE2d 678) (1996) (order requiring approval of habeas judge and certification that claims were novel before inmate could file any future lawsuits in forma pauperis was reasonable restriction in light of past pattern of filing frivolous lawsuits); cf. *Hooper v. Harris*, 236 Ga. App. 651, 654 (3) (512 SE2d 312) (1999) ("a blanket declaration that all filings are 'null and void by operation of law' is impermissible.").

In this circumstance, the trial court has not enjoined Higdon from future filings, but instead has mandated that Higdon observe certain conditions before filing. The trial court's exercise of its discretion in undertaking such actions to aid in the orderly administration of its business will not be disturbed on appeal absent an impermissible restriction of Higdon's access to the courts, and no such restrictions were imposed in this case. *Howard*, 266 Ga. at 772-773 (1); *In re Carter*, 235 Ga. App. at 552 (1); *Smith*, 226 Ga. App. at 700 (3).

5. Regarding Dr. Higdon's remaining enumerations of errors with respect to the trial court's evidentiary findings, we presume that the trial court properly considered all of the evidence before it. *Brewer v. Harvey*, 278 Ga. App. 503, 505 (629 SE2d 497) (2006). And "[a]s factfinder, it was the trial court's duty to reconcile seemingly

14

conflicting evidence and to weigh the credibility of witnesses." *Willis v. Willis*, 288 Ga. 577, 580 (3) (d) (707 SE2d 344) (2010). Higdon has not shown that the trial court abused its discretion.

*Judgments affirmed in Case No. A12A1763 and Case No. A12A2188. Appeal dismissed in Case No. A12A2145. McFadden and McMillian, JJ., concur.*