**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 28, 2023**

# In the Court of Appeals of Georgia

A22A1586. WRIGHT v. WRIGHT.

BARNES, Presiding Judge.

Charles E. Wright (Husband) appeals from an order holding him in contempt for failure to pay alimony and other court-ordered amounts to Nealie M. Wright (Wife). Husband contends that service was insufficient, that his failure to pay was not wilful, and that the contempt order included an impermissible self-executing arrest provision. Because there was no evidence that Husband's failure to pay was wilful, we reverse the judgment; all other contentions are thus rendered moot.

These background facts are not materially controverted. Husband and Wife married on August 31, 2013. At that time, Husband was incarcerated at Coastal State Prison. He had been imprisoned for nearly three decades. Upon his release on June 29, 2020, he went to Columbus and moved into the house where Wife was living on

O'Neal Street. Approximately five weeks later, on or about August 1, 2020, Husband and Wife separated.

Wife obtained counsel and filed on August 18, 2021 a complaint for divorce in the Superior Court of Muscogee County. On November 5, 2021, the court dissolved the parties' marriage. In the Final Judgment and Decree, the court recounted at the outset that it had held a hearing with "[Wife] appearing by Zoom and being represented by counsel . . . and [Husband] having failed to appear either on Zoom or in person." Next, the court determined therein "that [Husband] was personally served by the sheriff of Muscogee County . . . , [that Husband] has failed to file any responsive pleadings in this matter, and [that] the Court ha[s] heard and considered the evidence." Upon granting the parties a divorce, the court imposed upon Husband the following financial obligations (that are at issue in this appeal):

> [Husband] shall pay to [Wife] as permanent alimony the sum of $500.00 per month, commencing November 1, 2021, and continuing with a like payment on the 1st day of each [month] thereafter until such time as [Wife] shall die or remarry. . . .

> [Husband] is ordered to pay to [Wife] the sum of $500.00 to reimburse her for the deposit she paid on the home [on O'Neal Street]. Said sum shall be paid in full within thirty (30) days of the date of this Order.

[Husband] shall pay to [Wife] as Court costs the sum of $283.50. Said sum shall be paid directly to [Wife] within thirty (30) days of the date of this Order. . . .

[Husband] shall pay to . . . attorney for [Wife] the sum of $1,500.00 as attorney fees, which sum shall be paid directly to said attorney within thirty (30) days of the date of this Order.

On December 3, 2021, Husband, through counsel, filed a motion for reconsideration. During the pendency of Husband's motion, Wife filed on March 17, 2022, a contempt motion against Husband for failure to pay the alimony and other court-ordered monies.

The court convened an evidentiary hearing on March 29, 2022 to address both motions. Regarding the motion for reconsideration, Husband sought relief from the Final Judgment and Decree, contending that it constituted an unfair windfall to Wife.[1] Husband's motion was accompanied by his domestic relations financial affidavit, wherein he stated that his income was $0 and that his assets totaled $0. Regarding the contempt motion, Husband contended that service of the motion had been insufficient

---

[1] Husband's attorney reported at the hearing that Husband had been referred to her office by Homeless Resource Network, and that upon reviewing the facts and case law, her office decided to file the motion for reconsideration. Homeless Resource Network, as that attorney described, was "one of our community partners."

and that notice of the contempt hearing had been inadequate. Additionally, and most pertinent at this juncture, Husband contended that holding him in contempt was unauthorized – not because he had paid the court-ordered monies, but because his failure to do so had not been wilful.

After the hearing, the trial court ruled in Wife's favor.[2] In its order entered on April 11, 2022, the court determined that service of Wife's contempt motion was proper, finding that it was served upon Husband's attorney of record during the pendency of the motion for reconsideration. Further, the court determined that Husband had received reasonable notice of the charge of contempt and had been

---

[2] It is undisputed that the motion for reconsideration was denied. Husband thereafter sought this Court's review of the Final Judgment and Decree, but his discretionary application, which was filed on May 2, 2022, was dismissed as untimely filed. See Case No. A22D0372 (dismissed on May 24, 2022). As we explained in the dismissal order:

> The filing of a motion for reconsideration does not extend the time for filing a discretionary application for appeal, and the denial of a motion for reconsideration of an appealable order or judgment is not itself appealable. See *Bell v. Cohran*, 244 Ga. App. 510, 511 (536 SE2d 187) (2000); *Savage v. Newsome*, 173 Ga. App. 271, 271 (326 SE2d 5) (1985).

afforded opportunity to be heard – and indeed had provided evidence and argument – regarding the contempt allegations.[3]

The court went on to rule that Husband was in wilful contempt for his failure to comply with the Final Judgment and Decree in that the evidence showed that he had not paid: (i) "the permanent alimony . . . as due in the amount of $2,500.00 as of March 29, 2022"; (ii) the $500 deposit that Wife had paid to rent the home located on O'Neal Street; (iii) the court costs of $283.50, associated with Wife's filing the divorce complaint; and (iv) the attorney fees of $1,500 that she had incurred during the divorce proceedings.[4] Finally, the trial court set out parameters by which Husband could either purge himself of the contempt or be incarcerated indefinitely:

> To purge himself of the contempt related to his willful failure to pay alimony to [Wife], his willful failure to reimburse [Wife] for the housing

---

[3] See, however, *Ford v. Ford*, 270 Ga. 314, 316 (509 SE2d 612) (1998) ("[W]here the notice of the hearing is unreasonable, the fact that the contemnor voluntarily appears and defends at the hearing does not excuse the failure to comport with due process.").

[4] The trial court also noted that Wife had incurred additional attorney fees in connection with the filing of the contempt motion, then instructed Wife's attorney to submit an itemized affidavit of those costs such that the issue of those attorney fees could be addressed by subsequent order.

Pursuant thereto, Wife's attorney later submitted affidavit testimony that additional charges of $1,200 had been incurred by Wife.

deposit, and his willful failure to reimburse [Wife] for her court filing fees as previously ordered, [Husband] shall pay the aggregated total of $3,283.50 to [Wife] by no later than April 30, 2022. If [Husband] fails to pay said sum of $3,283.50 by April 30, 2022, [Husband] is ordered confined immediately to the Muscogee County Jail until such time as he purges himself of contempt by paying the sum of $3,283.50. In this event, the Sheriff, or his lawful Deputy, is hereby directed to pick up [Husband] from his address [on] O'Neal Street . . . and transport [him] to the common jail of Muscogee County.

From this order, Husband procured the instant discretionary appeal.

1. Challenging the contempt order, Husband maintains that his failure to pay the cited amounts did not constitute wilful disobedience because he was financially unable to make the payments. He further contends that the trial court erred in ordering him incarcerated, given his inability to pay the arrearage.[5]

---

[5] See generally *Ensley v. Ensley*, 239 Ga. 860, 862-863 (238 SE2d 920) (1977) (reciting principles that "imprisonment conditioned upon payment of alimony is not imprisonment for debt where the contemnor is found to be able but unwilling to pay"; that "[a] man who refuses to pay alimony or child support when he is able to do so is imprisoned for his refusal to abide by the court's order, not for debt"; that "[t]he imprisonment must be clearly for the contempt of the process of the court, and be of one who is able and unwilling to obey the order of the court"; and that "[t]he moment it appears that there is inability, it would clearly be the duty of the judge to discharge the party, since it is only the contempt, the disobedience upon which the power rests") (citation, punctuation, and emphasis omitted).

A party who has failed to pay support under a court order when he has the ability to pay may be found guilty of civil or criminal contempt and incarcerated under either. When the trial court orders incarceration for an indefinite period until the performance of a specified act, the contempt is civil.

(Footnotes omitted.) *Hughes v. Ga. Dept. of Human Resources*, 269 Ga. 587, 587 (1) (502 SE2d 233) (1998).[6]

"The essence of civil contempt . . . is willful disobedience of a prior court order." *Pate v. Pate*, 280 Ga. 796, 798 (3) (631 SE2d 103) (2006). See *Higdon v. Higdon*, 321 Ga. App. 260, 263 (1) (739 SE2d 498) (2013) ("To hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment.") (citation and punctuation omitted).

A former husband's inability to pay the required alimony and [other court-ordered amounts] under a divorce decree is a valid defense to a contempt action. The burden, however, is on the one refusing to pay to show that he has in good faith exhausted all of the resources at his command and has made a diligent and bona fide effort to comply with

---

[6] See generally *Backus v. Backus*, 299 Ga. App. 122, 123-124 (1) (682 SE2d 138) (2009) (explaining that while "the general rule is that contempt is not an available remedy to enforce the payment of a money judgment," the trial court's use of its contempt power to enforce its orders in alimony cases is authorized by OCGA § 19-6-28 (a)").

the decree awarding alimony or child support. The contempt question, including any factual issues as to the former husband's ability to pay, is for the trial court to determine, and that court's adjudication will not be reversed on appeal unless there has been an abuse of discretion.

(Citations and punctuation omitted.) *Mahaffey v. Mahaffey*, 238 Ga. 64, 65 (2) (230 SE2d 872) (1976). See *Darroch v. Willis*, 286 Ga. 566, 568 (2) (690 SE2d 410) (2010); *Brown v. Brown*, 269 Ga. 724, 725-726 (1) (506 SE2d 108) (1998) (reiterating that "[the defendant's] failure to pay would be a wilful contempt unless he demonstrated a financial inability to meet that obligation" and that "[t]he burden is on defendant to show affirmatively that he is unable to pay the judgment of the court").

At the evidentiary hearing, Wife and Husband took the stand. Wife testified that before Husband was released from prison, she paid a $500 deposit to rent the house located on O'Neal Street; and that after Husband's release, he moved into the house with her. Wife further testified that, since their divorce, Husband had not paid alimony to her and that the amount outstanding was $2,500; that Husband had not reimbursed to her the $500 deposit pertaining to the house; that he had not paid to her the $283.50 that she had incurred as court costs; and that he had not provided her

with the $1,500 that she had incurred in attorney fees. Wife's attorney reported at the hearing, "I will state in my place he has not paid any of the attorney's fees."

As noted above, Husband countered that he had not been financially able to pay the monies at issue. When he took the stand, he recounted that he had attended school until the 10th grade; that at some point thereafter, he had obtained his GED; that he had been incarcerated for 27 - 28 years prior to his release on June 29, 2020; and that he then moved into the house with Wife. It is undisputed that at the time of the hearing, Husband (but not Wife) was still living in the house on O'Neal Street; and as Husband testified, his rent was being paid by Homeless Resource Network.[7]

Husband was asked whether he had "at any point purposefully not pa[id] [Wife]"; he responded that the "[o]nly income I get is food stamps every month, and Homeless Resource Network have to take care of everything else for me." For instance, Husband elaborated, Homeless Resource Network "help me with medical stuff and the Health Department for my HIV."

Husband described that he had previously earned money landscaping through a "work release" program; that around the time he was released from prison, "Covid had just came out"; that because of his immune system, he looked for a job that would

_____

[7] See generally fn. 1, supra.

allow him to work outside; and that, "[I] tried to work a little bit with landscaping, tree work but I couldn't do it. My body just wouldn't hold up." Additionally, Husband testified that he had been injured since being released from prison, and that he had also undergone hernia surgery in March 2022. He reported, "I'm not able to work just getting out of surgery."

Husband revealed further, "I have disability case pending now." In response to questioning, Husband explained,

> A: [Wife] originally filed for it herself and we talked to the people on the phone and told her she would get her monthly for full amount of money check, but I only get $220. So I told her I didn't want to file jointly with her because I can't live off that, that's nothing. And she got mad because I didn't want to file with her saying I was married and wouldn't get my – because I was not able to work, I can't do $220 a month. . . .
> Q: Well, okay. So did you file after that at some point?
> A: Yes, sir, I did.
> . . .
> Q: Okay. So has Social Security ruled on your petition? Did they deny you?
> A: No, sir, they haven't ruled on it yet. I'm waiting on a decision now. I had do some lab work, waiting on that to come back. Didn't have an order on it, so I'm just waiting now for them to make a decision.

Q: Do you have a lawyer representing you on the Social Security disability case?

A: I have a caseworker working on it. . . .

Q: Is that through the Homeless Network?

A: Yes, sir.

Husband was asked whether he could tap into any other resources:

Q: Is there any other way that you can get any kind of income to pay [Wife]? Anybody you can borrow money from or anything?"

A: Not really, because I can't hardy – I can't live myself. I can't . . .

Q: And you said something before that you were only going to get $200 if you were successful with your application when you and [Wife] were living together. Can you explain that a little bit more?

A: Well, when she had called the people about filing, they would tell her she get her full $8, $900 a month for her that she was getting. . . . But I wasn't getting but $220. I can't pay the bills with $220. I don't want to file that way. That's when she got mad, got upset because I wouldn't file that way. But what can a man do with $220 a month? That ain't going to pay nothing.

Q: Why were they only going to pay $220?

A: Because she had filed it, I was joint married to her.[8]

---

[8] The hearing transcript shows that Husband's attorney reported, and Wife's attorney accepted, that "[Husband's] application for SSI is pending."

It is well established that "a party who has failed to pay support under a court order *when he has the ability to pay* may be found guilty of civil or criminal contempt and incarcerated under either." (Emphasis supplied.) *Ford v. Ford*, 270 Ga. 314, 315 (509 SE2d 612) (1998). However, "[c]ontempt is a drastic remedy which ought not to deprive one of his liberty unless it rests upon a firm and proper basis." Id. at 316. Accordingly, while the trial court's ruling in this case is reviewed for abuse of discretion,[9] we remain mindful that such "discretion is not unfettered. As always, the trial court's discretion must be exercised in conformity with the governing legal principles, and . . . we must evaluate on appeal . . . whether the legal requirements were satisfied." *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014).

Here, we find no evidentiary basis from which the trial court could have determined that Husband had the ability to pay to Wife $500 monthly alimony and the other court-ordered amounts. Wife cites evidence that she claims showed that Husband had a Facebook page advertising that he owned a business conducting, inter

---

[9] See *Brown v. Brown*, 300 Ga. 559, 560 (796 SE2d 269) (2017) ("Trial courts have broad discretion in ruling on a motion for contempt, and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it.") (citation and punctuation omitted).

12

alia, landscaping work. At the hearing, Husband denied owning and/or operating any such business. But even assuming arguendo that it could be inferred from the Facebook page that the advertised business was in operation by him, a finding that profits derived therefrom were sufficient for Husband to have paid the $500(+) each month rests on sheer speculation under the circumstances here.

In this case, the record is devoid of any evidence authorizing a finding that Husband had the ability to pay the court-ordered amounts. Husband married Wife during a lengthy incarceration period; upon his release from prison, he faced multiple challenges finding employment, including the Covid pandemic and his own serious health complications; his income comprised of food stamps (as he discerned); the rent for his housing was being paid by a third-party community agency; that agency had also facilitated Husband's medical care, as well as provided him with various other support; Husband had no bank account; and he had no other resources into which he could tap. While Husband was applying for federal monetary benefits, there was no evidence that he was eligible for an amount that would render it feasible for him to

pay the court-ordered monthly amount(s).[10] And as Wife acknowledges in her brief,[11] Husband had yet to receive any money from that source.

Because the record contains no evidence authorizing a finding of wilful disobedience,[12] the judgment of contempt is reversed. See *Hughes*, 269 Ga. at 588 (2) (reversing judgment continuing father's incarceration for civil contempt for failure to pay child support, where "he lacks money and property and his only source of income is manual labor"); *Brady v. Brady*, 228 Ga. 793, 795 (187 SE2d 896) (1972) (reversing judgment holding husband in contempt for failure to pay alimony, where the record contained "no evidence authorizing a conclusion that the husband has been earning income with which he could pay the monthly alimony payments due," and where evidence showed that husband had been unable to sell assets to obtain money;

---

[10] See generally *Johnson v. Flanagan*, 179 Ga. App. 708, 709 (2) (347 SE2d 643) (1986) (discussing "whether under the law the social security income he received was to be applied first to [the former husband's] own necessary care or whether alimony payments could first be paid").

[11] Wife states in her brief that "[Husband] had sought Social Security benefits which applications had been denied or were pending."

[12] "A trial court in a contempt action acts as the trier of fact, and is vested with broad discretionary power when the evidence is conflicting." *Pate*, 280 Ga. at 798 (4). For reasons explained, we find no material conflict in the evidence allowing for the trial court's exercise of its discretion to hold Husband in contempt.

explaining that testimony that husband was observed on one occasion in work clothes and that his truck was blocking the entrance to his basement shop was not sufficient to refute husband's testimony that he had not earned any income by his labor in recent months; and determining that wife's testimony regarding his "physical appearance at the trial" was not sufficient to refute husband's evidence that he was physically unable to work); *Johnson v. Johnson*, 207 Ga. 509, 510 (62 SE2d 909) (1951) (reversing judgment finding husband in contempt for failure to pay temporary alimony, where the evidence was without conflict on the material questions, and where the evidence did not support a finding that "husband had it reasonably and fairly within his power to comply with the order") (citation and punctuation omitted); *Poole v. Wright*, 188 Ga. 255, 258 (3) (3 SE2d 731) (1939) ("Where the uncontroverted evidence shows the inability of the husband to pay the judgment awarded his wife for permanent alimony, it is error to adjudge him in contempt or to keep him confined in jail under an order adjudging him in contempt[.]") (citation and punctuation omitted); *Gallaher v. Breaux*, 286 Ga. App. 375, 376-378 (650 SE2d 313) (2007) (reversing judgment continuing father's incarceration for civil contempt, upon evidence that the father "had no liquid assets, did not own an automobile, . . . had no other assets with which to pay the back child support[,]" and could not obtain

15

any more money from his family, who had already given him $55,000); *Pittman v. Pittman*, 179 Ga. App. 454, 455 (346 SE2d 594) (1986) (reversing judgment holding the father in contempt for failure to pay court-ordered child support and further ordering the father incarcerated until the resulting arrearage was paid, where the evidence did not support a finding that the father – who was unemployed, receiving workers' compensation benefits, and unable to obtain a loan due to his employment situation – had the ability to pay but merely refused to do so); *Ex parte Griggs*, 435 So2d 103, 105 (Ala. Civ. App. 1983) (concluding that the contempt order against father for failure to pay child support was not authorized, where record showed that withholding $55 a month from the father's $215 monthly Social Security Income check – his only financial resource – would leave the father with $160 per month to live on, and "[s]uch a sum establishes [the father] as 'impecunious, not contumacious'").[13]

---

[13] Cf., e.g., *Amoakuh v. Issaka*, 299 Ga. 132, 133-134 (2) (786 SE2d 678) (2016) (affirming trial court's contempt order, where father admitted that he had failed to timely pay all child support, and where record amply supported the trial court's conclusion that father "had access to sufficient funds, could have paid the amount due weeks earlier than he did, and that his failure to pay child support was flagrant and willful") (punctuation omitted); *Weiner v. Weiner*, 219 Ga. 44, 45 (131 SE2d 561) (1963) (affirming trial court's finding of contempt, where ex-husband "was able to finance a honeymoon trip to Europe for himself and his new wife at a cost of $6,500 by selling a house, and the evidence indicates that his financial

2. "Because of this disposition,[14] we need not address [Husband's] enumerations regarding whether he was properly served and had adequate notice of the contempt hearing." *Schmidt v. Schmidt*, 270 Ga. 461, 463 (4) (510 SE2d 810) (1999), disapproved in part on other grounds, *Gilliam v. State*, 312 Ga. 60, 64 (860 SE2d 543) (2021). Nor do we need to address Husband's contention that the contempt order contained an impermissible self-executing arrest provision. See *Higdon*, 321 Ga. App. at 265 (2) (739 SE2d 498) (2013) (finding no need to determine whether a provision was invalid as self-executing, where such question had become moot).

*Judgment reversed. Brown and Hodges, JJ., concur.*

_____

condition is such that he can pay the judgment of the court"); *Bernard v. Bernard*, 347 Ga. App. 429, 435 (3) (819 SE2d 688) (2018) (finding no abuse of discretion in trial court's conclusion that the former husband had the ability to pay alimony and child support, where evidence showed, among things, that he was living a "comfortable lifestyle," was renting a house of approximately 2,400 square feet, had recently vacationed in Las Vegas, had borrowed money to purchase a vehicle on which he owed $34,600, was drawing a monthly salary of $7,353, and had reported cash accounts worth $1,774.25 and $9,378); *Webb v. Watkins*, 283 Ga. App. 385, 386 (1) (641 SE2d 611) (2007) (affirming trial court's conclusion that former husband had wilfully violated his child support obligation pursuant to legitimation decree, given evidence that at the time of the contempt hearing, he owned a watch valued in excess of $8,000 and a home in which he had equity of more than $7,000, and where other evidence showed that, in contemplation of the contempt hearing, he transferred to his girlfriend a one-half interest in her $1 million home which she had quitclaimed to him at the time their cohabitation began).

[14] See Division 1, supra.