**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 20, 2023**

# In the Court of Appeals of Georgia

A23A0869, A23A1110. STEWART v. STEWART.

MILLER, Presiding Judge.

These two appeals concern a final judgment and decree of divorce involving Keith Lee Stewart, Jr. and Bridgette Stewart, the divorced parents of two minor children. In Case No. A23A0869, the father appeals from the trial court's order denying his motion for contempt against the mother, arguing that (1) the trial court erred in applying the doctrine of unclean hands; (2) the trial court erred in finding that his natural and legal visitation rights were conditioned on his failure to purchase an airplane ticket; and (3) the trial court erred in not finding the mother in contempt. In Case No. A23A1110, the father appeals from an order finding him in contempt of the final judgment in the divorce case. In this appeal, the father argues that (1) the trial

court lacked personal jurisdiction over him based on insufficient service of process; (2) the trial court erred when it held a hearing on the mother's amended motion for contempt because only the initial contempt motion was noticed; (3) the trial court failed to notify him of the sua sponte limited reconsideration/re-opening of the evidence on the mother's contempt motion and amended contempt motion; and (4) the terms of the final judgment were too vague to put him on notice of his obligations, and his conduct was not wilful.

In Case No. A23A0869, we determine that the trial court properly exercised its discretion in declining to find the mother in contempt, and we therefore affirm. In Case No. A23A1110, we agree with the father that out-of-state service was not perfected on him, but we leave it to the trial court to address whether, even in the absence of such service of process, the trial court nevertheless had personal jurisdiction over the father. Accordingly, in Case No. A23A1110, we vacate the contempt orders and the trial court's denial of the father's motion to vacate, and we remand this case for the trial court to address this issue in the first instance.

The parties were divorced in June 2021. The mother resides in Georgia while the father is an enlisted member of the United States military and is currently

stationed in Hawaii. According to the parenting plan incorporated into the divorce decree, the mother retained primary physical custody of the two children, and the parties share joint legal custody. The parenting plan provides that the father may choose to have visitation with the children during Thanksgiving, spring break, summer, and Christmas. If he does so elect, he must notify the mother in writing and provide her with copies of the children's round trip airline tickets, including the purchase of an unaccompanied minor escort. According to the parenting plan, the father is also "responsible for any and all costs" incurred in exercising his visitation. The parents may "vary the parenting time/visitation" by mutual agreement, but any such agreement is not a binding court order. The final judgment also granted the mother one-half of the balance in the father's stock account, which, according to the father's averment, contained $80,000 as of May 2021. The father was also ordered to reimburse the mother $7,554.90 for her attorney fees, with such payment to be made "within 180 days from the date the Final Judgment and Decree is filed with the Clerk of the Superior Court."

In August 2021, the mother filed a contempt action in Camden County against the father, asserting that he had failed to disclose any information concerning the stock account so as to facilitate the transfer of funds. The mother's counsel contacted

3

the attorney that represented the father in the divorce action, Lynn Martin, to inquire whether she would accept service in connection with the contempt matter. Although Martin responded with offers to assist with resolving the issues related to the stock account, she informed the mother's counsel that she had not been retained to represent the father in the contempt matter, and she did not accept service.

A Camden County process server purportedly served the father in the contempt matter while the father was at the Jacksonville International Airport in Florida. The trial court then scheduled a hearing on the contempt motion for February 24, 2022, and notice of the hearing was sent to the father via email. The mother then amended her contempt motion and sought to have the father held in contempt for both his failure to offer information pertaining to the stock account and his failure to reimburse her for attorney fees.

The trial court found the father in contempt after a hearing which the father did not attend. After the father failed to purge himself of contempt, the trial court ordered his arrest and incarceration. In April 2022, Martin entered an appearance as the father's attorney in the contempt matter and filed a motion to vacate the contempt and incarceration orders, arguing that she had been retained for the contempt matter the month prior, and that the orders were void due to insufficient service of process, lack

4

of notice, and a violation of due process. At the ensuing hearing, the father again argued that the trial court lacked personal jurisdiction over him due to insufficient service. The trial court denied the motion to vacate, entered an amended order of contempt requiring the father to provide information pertaining to the stock account and pay a portion of the mother's attorney fees, and then later entered a second amended contempt order nunc pro tunc to the date of the hearing on the father's motion to vacate.

In the interim, in August 2022, the father filed a motion for contempt against the mother, arguing, among other things, that she had failed to send the parties' older child, K. S., to visit with him that summer. Following a hearing on the father's contempt motion, the trial court determined that the mother was not in contempt. In the trial court's view, both parties had "unclean hands" because they had varied the visitation terms by initially agreeing for the father to use standby tickets for the children's travel. The trial court found a "violation" by both parties, reasoning that although the mother was obligated to send K. S. to visit with the father for the summer, the father had not actually purchased an airplane ticket for K. S., and so K. S. had no way to travel to Hawaii.

5

The father now appeals from (1) the trial court's order denying his motion for contempt against the mother; and (2) the second amended order finding him in contempt.

*Case No. A23A0869*

1. In two related enumerations, the father argues that (1) the trial court erred in applying the unclean hands doctrine in denying his motion for contempt; (2) any alleged non-compliance in his failing to purchase an airplane ticket for K. S. was caused by the mother's actions, including her "last minute" objection to the children flying standby; and (3) the trial court erred in not finding the mother in contempt. We determine that the trial court did not abuse its broad discretion in declining to find the mother in contempt.[1]

"A trial court has broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused. Thus, the question of whether a contempt has occurred is for the trial court." (Citations and punctuation omitted.) *Higdon v. Higdon*, 321 Ga. App. 260, 262 (1) (739 SE2d 498) (2013). "[T]he trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it." (Citation omitted.) *Froehlich v.*

---

[1] The mother has not filed an appellate brief.

6

*Froehlich*, 297 Ga. 551, 554 (3) (775 SE2d 534) (2015). "'Unclean hands' is a shorthand reference to OCGA § 23-1-10, which states: 'He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.'" *Higdon*, supra, 321 Ga. App. at 262 (1) (a).

The record shows that the father's mother is an airline employee and that she allowed the father to use free "guest passes" to facilitate the children's travel to Hawaii. When the children flew to Hawaii on standby for spring break, however, they got stranded in Las Vegas and had to fly to Phoenix, and they missed a day of school. The mother described the ordeal as "stressful," and approximately a week before the scheduled commencement of the father's summer visitation with the children, she told the father that she no longer wanted the children to travel using standby tickets. The record also shows that K. S. expressed to the father that she did not want to visit with him that summer. As a result, the mother told the father that she could not "force" K. S. to visit with him and that K. S. "wasn't going to be there." Ultimately, the father did not buy a ticket for K. S.

Pretermitting whether the trial court properly applied the doctrine of unclean hands, we still find no abuse of discretion in the trial court's decision that the mother

7

was not in contempt. In its ruling from the bench,[2] the trial court found that after the mother specifically informed the father that she did not want the children to travel standby, the father failed to purchase a ticket for K. S., and therefore K. S. had no way to travel to Hawaii. Accordingly, in declining to find the mother in contempt, the trial court stated, "I just can't tell from the evidence." While recognizing that K. S. had expressed not wanting to visit with the father, the trial court found that if the father had purchased a ticket for K. S., the mother "might have" sent K. S. to visit. This conclusion finds some support in the record. The mother testified that she had hoped that K. S. would visit with the father in the summer, that she had been planning for the visit, and that she enrolled K. S. in a summer math program only "after it was decided that [the father] *didn't buy her plane ticket* and [K. S.] was not going." "The trial court was able to evaluate the parties' credibility and was entitled to credit [the mother's] testimony." *Froehlich*, supra, 297 at 555 (3). Accordingly, because the trial court's ruling is supported by some evidence in the record, even if slight, we must affirm.

---

[2] A trial court's "oral pronouncements on the record may provide insight on the intent" of a subsequent written judgment, as is the case here. (Citation and punctuation omitted.) *Infinite Energy, Inc. v. Cottrell*, 295 Ga. App. 306, 311 (5) (671 SE2d 294) (2008).

Although the father argues at length about the costs associated with purchasing a ticket for K. S. on short notice and that K. S. had no right to elect not to visit with him, the trial court evidently considered these factors. The court fully acknowledged that the father would have incurred a significant expense in purchasing a ticket for K. S., but determined that when the mother expressed that she did not want the children to travel standby, the parties were obligated to abide by the terms of the written parenting plan, with the father responsible for providing a ticket. After cautioning the mother on her duty to honor the father's visitation rights, the court further stated that K. S. could not have elected to not visit with the father and that the mother had an obligation to tell K. S. to "get on that airplane." The court reiterated, however, that K. S. "had no way to get on the airplane because [the father] didn't send the ticket." The trial judge's detailed pronouncements from the bench evince that he carefully considered the conduct of both parties but ultimately found that the evidence failed to definitively show that the mother wilfully violated the parenting plan under the circumstances of this case. See *Hill v. Davis*, 337 Ga. App. 683, 684 (2) (788 SE2d 570) (2016) (where both parties failed to adhere to the trial court's order, the trial court properly exercised its discretion in finding that neither party's actions "rose to the level of contempt"); *Greene v. Greene*, 306 Ga. App. 296, 300 (3) (701 SE2d 911)

9

(2010) (no abuse of discretion in the trial court's failure to find the husband in wilful contempt where the court's "thorough" order showed that the court "considered the Husband's deplorable conduct[,]" but nevertheless found that he did not intend to wilfully violate the settlement agreement). Therefore, we find no abuse of discretion in the trial court's decision.[3]

2. The father next claims that in denying his motion for contempt, the trial court found that his natural and legal visitation rights were conditioned on his failure to purchase an airplane ticket and therefore the court improperly made his visitation rights contingent upon the payment of monetary support. This argument fails because the trial court did not make the father's visitation rights conditioned on the payment of support.

Pursuant to the parenting plan, the father is responsible for "any and all costs required" for the children's visits. Inherently, then, the parenting plan obligates the father to purchase airplane tickets to facilitate the children's visits with him, if such tickets are required. In fact, the trial court awarded the father a downward deviation in child support based on these anticipated travel expenses. See *Park-Poaps v. Poaps*,

---

[3] For this reason, we reject the father's contention that the trial court erred in denying him make-up visitation for the missed summer visit with K. S.

351 Ga. App. 856, 874 (9) (833 SE2d 554) (2019) (trial courts may deviate from the presumptive child support amount to account for travel expenses associated with visitation). Although the father is correct that visitation cannot be made contingent upon the payment of child support,[4] it is well-settled that the "costs involved with visitation [do] not amount to child support." *Carlson v. Carlson*, 284 Ga. 143, 143-144 (663 SE2d 673) (2008) (affirming the trial court's decision in a contempt matter that the mother would be responsible for "one hundred percent of the cost associated with her supervised visitation with the parties' minor children"). Therefore, the trial court did not make the father's visitation rights contingent on the payment of support, and this claim of error lacks merit.

Accordingly, in Case No. A23A0869, we affirm the trial court's denial of the father's motion for contempt.

*Case No. A23A1110*

In this appeal, which concerns the father being found in contempt, the father argues that (1) the trial court lacked personal jurisdiction over him based on insufficient service of process and therefore the orders of contempt are void; (2) the trial court erred when it held a hearing on the amended motion for contempt when

---

[4] *Spirnak v. Meadows*, 355 Ga. App. 857, 862 (2) (844 SE2d 482) (2020).

11

only the initial motion for contempt was noticed; (3) the trial court failed to notify him of the sua sponte limited reconsideration/re-opening of the evidence on the mother's contempt motion and amended contempt motion; and (4) the terms of the final judgment were too vague to put him on notice of his obligations, and his conduct was not wilful. We agree with the father that service was not perfected on him in Florida, but we determine that the trial court must decide, in the first instance, whether its exercise of personal jurisdiction over the father was nevertheless proper.

1. First, the father argues that service on him in Florida was legally defective. We agree with this contention of error.

"Where a defendant claims there was a failure of service, the trial court has the authority to decide as a factual matter whether service has occurred. OCGA § 9-11-12 (d). This finding will not be disturbed as long as there is some evidence to support it." (Citation omitted.) *Jacobson v. Garland*, 227 Ga. App. 81, 83 (1) (487 SE2d 640) (1997). In challenging the sufficiency of service, the defendant "bears the burden of showing improper service. The process server's return of service can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit." (Citation omitted.) Id.

12

"In a contempt action personal jurisdiction is essential[] because the trial court's contempt powers must ultimately be enforced by civil contempt, i.e., having the person within the control of the trial court." *Singleton v. Dept. of Human Resources*, 263 Ga. App. 653, 657 (3) (a) (588 SE2d 757) (2003). To initiate a contempt proceeding, the petitioner must "serv[e] the respondent with a copy of the contempt motion and a rule nisi. The rule nisi gives the respondent notice of the charges and the opportunity for a hearing at a specific time and place. To comport with due process, the notice of the hearing must be reasonable." (Citations omitted.) *Brown v. King*, 266 Ga. 890 (1) (472 SE2d 65) (1996).

Georgia's Long Arm Statute allows for the exercise of personal jurisdiction over non-resident defendants in a contempt action seeking enforcement of a divorce decree entered in Georgia. OCGA § 9-10-91 (5); *Braden v. Braden*, 260 Ga. 269 (392 SE2d 710) (1990). A non-resident "may be served with a summons outside the state in the same manner as service is made within the state by any person authorized to make service by the laws of the state . . . in which service is made or by any duly qualified attorney, solicitor, barrister, or the equivalent in such jurisdiction."[5] OCGA

[5] The mother does not contend that the process server in this case is a "duly qualified attorney, solicitor, barrister," or the Florida equivalent of such. Similarly, she does not claim that the father was a Georgia resident at the time of the purported

13

§ 9-10-94. Accordingly, the person who effectuated the prescribed method of service in this case must have been "authorized to do so under the law of the sovereign in which service [was] made." (Punctuation omitted.) *Samay v. Som*, 213 Ga. App. 812, 813 (1) (446 SE2d 230) (1994).

The father was purportedly served with the contempt motion in Jacksonville, Florida, in November 2021.[6] Florida law provides,

> (1) All process shall be served by the sheriff of the county where the person to be served is found, except nonenforceable civil process, criminal witness subpoenas, and criminal summonses may be served by a special process server appointed by the sheriff as provided in this section or by a certified process server as provided in 48.27.[7] Civil witness subpoenas shall be served by any person authorized by rules of civil procedure.
>
> (2) (a) The sheriff of each county may, in his or her discretion, establish an approved list of natural persons designated as special process servers. The sheriff shall add to such list the names of those natural persons who have met the requirements provided for in this section. . . .

service in Florida.

[6] The motion was not accompanied by a rule nisi.

[7] Fla. Stat. Ann. § 48.27 pertains to a list of certified process servers assembled by the chief judge of each judicial circuit in Florida.

Fla. Stat. Ann. § 48.021 (1) - (2).

Preliminarily, we reject the mother's argument that she was not provided with written notice of the father's intent to raise a foreign law issue. The father recited the relevant portions of the Florida statute in his motion to vacate, and he explicitly argued that the process server did not satisfy the statutory prerequisites for serving process in Florida. See *Samay*, supra, 213 Ga. App. at 815 (2) (c) (party may give notice in their pleadings or provide other reasonable written notice). Also, the mother responded to the motion. Thus, the father was not prohibited from raising the foreign law issue.

Second, we determine that the father was not properly served with process in Florida. The father was purportedly served by a Camden County, Georgia, process server. At the hearing on his motion to vacate, the father presented uncontroverted evidence showing that the process server had not been appointed as a process server in Jacksonville, Duval County, Florida. The trial court nevertheless determined that the father was properly served because there was nothing in the Florida statute dictating that a Georgia process server cannot serve civil papers in Florida. But, the Florida statute delineates the categories of persons eligible to make service of process in that State. "These persons include a sheriff, a person appointed by the sheriff in the

sheriff's county[,] and a certified process server appointed by the chief judge of the circuit court." *Abbate v. Provident Nat. Bank*, 631 So2d 312, 313 (Fla. 5th DCA 1994). Service of process may also be made by an "elisor," which is a person appointed by court order under the Florida Rules of Civil Procedure. Id. at 313-314. The record is entirely devoid of evidence showing that the Camden County process server was appointed, certified, or otherwise qualified in accordance with the Florida statute so as to legally empower him to personally serve the father in Florida. Therefore, the purported service on the father in Florida was not made by someone "authorized to make service" in Florida as required by OCGA § 9-10-94, and so service on the father was deficient. See *Delta Aliraq, Inc. v. Arcturus Intl.*, 345 Ga. App. 778, 780-781 (1) (815 SE2d 129) (2018) (failure to perfect service on an out-of-state defendant under OCGA § 9-10-94 results in a lack of personal jurisdiction); *Denny v. Croft*, 195 Ga. App. 871 (2) (395 SE2d 72) (1990) (the defendant's receipt of a copy of the complaint and summons in connection with an attempted but invalid service did not suffice); Compare *Forrister v. Manis Lumber Co.*, 232 Ga. App. 370, 372 (2) (501 SE2d 606) (1998) (service of non-resident defendant was effective where the defendant was personally served by a sworn and appointed deputy sheriff of Polk County, Tennessee, who was authorized by

16

Tennessee law to serve process and summons in civil cases). Therefore, the trial court erred in determining that the father was properly served with process in Florida.

2. In several related arguments, the mother nevertheless contends that any defects in service of process on the father in Florida are immaterial. She argues that (1) the contempt motion arose while the father was represented by counsel and litigating the underlying divorce case; (2) the father had notice of the contempt proceedings through copies of the contempt petition which were delivered to his counsel; and (3) the father waived his defense of insufficient service of process in the contempt matter by filing the January 2022 motion to set aside the final judgment in the divorce case.

These arguments, while raised below, were not ruled on by the trial court. And, although we may analyze whether a trial court's judgment was right for any reason, we decline to exercise our discretion to do so in this case, particularly given the limited nature of the record.[8] For instance, although it appears that Martin and another lawyer received copies of the contempt motion in July 2021, we cannot discern whether either attorney was served with a rule nisi for the February 24 contempt

---

[8] *Gastel v. DeKalb County*, 360 Ga. App. 449, 451 n.4 (861 SE2d 434) (2021) (the "right for any reason" doctrine is a discretionary tool).

17

hearing. Indeed, as late as February 10, 2022, Martin indicated to the mother's counsel by email that she had been unaware of the hearing. Further, although the mother claims that the father's motion to set aside the final judgment functioned as a general appearance that waived his defense of insufficient service, Martin stridently argued below that this motion served as a *limited* appearance, and the motion is not in the record for this Court's review. Therefore, given the fact-specific nature of the inquiry required to address the mother's arguments, we leave it to the trial court to address them in the first instance. See, e.g., *Austin v. Austin*, 245 Ga. 487, 490 (265 SE2d 788) (1980) (rejecting the premise that a non-resident defendant could seek modification of an alimony judgment while being immune to its enforcement for contempt, but explicitly limiting the holding to the specific facts of the case). Accordingly, in Case No. A23A1110, we vacate the trial court's contempt orders and the denial of the father's

motion to vacate, and we remand this case for the trial court to determine whether, even in the absence of valid service on the father in Florida, the trial court's exercise of personal jurisdiction over the father was nevertheless proper.[9]

*Judgment affirmed in Case No. A23A0869. Judgment vacated and case remanded with direction in Case No. A23A1110. Mercier, C. J., and Hodges, J., concur.*

---

[9] Given our holding, we do not address the father's remaining claims of error at this juncture.